R. H. HERRON CO. v. MOORE.

(Circuit Court of Appeals, Ninth Circuit.   October 6, 1913.)

No. 2,254.

BANKRUPTCY (§ 166*)—PREFERENCES—REASONABLE CAUSE BY CREDITOR TO BE-
LIEVE INSOLVENCY.

   Payments made to a creditor by an oil company within four ·months
prior to its bankruptcy on a pre-existing indebtedness for machinery and
supplies *held* to have been received by the creditor with knowledge of
such facts as gave it reasonable ground to believe that the company was
insolvent so as to constitute preferences, where the evidence showed that
the indebtedness was large, that the creditor had been obliged to take up
the bankrupt's notes which had been discounted at a bank, had repeatedly
urged· payment, and for a year before the bankruptcy had refused the
bankrupt further credit except for small amounts.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–253, 255–
258; Dec. Dig. § 166.*]

Appeal from the District Court of the United States for the South-
ern Division of the Southern District of California; Olin Wellborn,
Judge.

In the matter of the Cleveland Oil Company, bankrupt; William
H. Moore, trustee. From an order disallowing the claim of the R.
H. Herron Company except on repayment of preferences, claimant
appeals. Affirmed.

Geo. E. Whitaker, of Bakersfield, Cal., for appellant.

Ross T. Hickcox and L. O. Crenshaw, both of Los Angeles, Cal.,
for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. On January 12, 1911, a petition in bank-
ruptcy was filed against the Cleveland Oil Company, and thereafter
that company was duly adjudged a bankrupt. The appellant' herein
filed a claim against the bankrupt's estate for the sum of $14,804.32.
The trustee filed objection to the claim on the ground that the appel-
lant had received preference payments as follows: That on September
15, 1910, the bankrupt had paid the appellant the sum of $2,000; that
on October 31, 1910, the bankrupt had returned to the appellant oil
well casings of the value of $2,823.37; and on December 31, 1910,
the bankrupt had returned to the appellant two pumps of the value of
$300. Upon the testimony taken, the referee found that each of said
payments constituted a preference, and ordered that the appellant's
claim be not allowed unless the preferences be surrendered. On a peti-
tion for review, the court below sustained the ruling of the referee.
The payments were made within four months preceding the filing of the
petition in bankruptcy, and they were made on a pre-existing debt ow-
ing by the bankrupt to the appellant. Under the Bankruptcy Act (Act
July 1, 1898, c. 541, § 60, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]),
as amended by the Act of Congress of June 25, 1910, c. 412, § 11, 36
Stat. 842 (U. S. Comp. St. Supp. 1911, p. 1506), it is no longer neces-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sary, in order to establish a preference, to prove the existence of the debtor's intent to prefer. It is sufficient if it is shown that the creditor receiving the alleged preference payment had, at the time when it was made, reasonable cause to believe that the bankrupt was insolvent, and that in accepting and retaining the same he would receive a larger per cent. of his debt than the other creditors of the same class. It is not disputed that, on the dates when the payments were made to the appellant, the bankrupt was hopelessly insolvent. It is not disputed that the result of the payments was to give the appellant a greater percentage of its debt than other creditors of the same class. But it is earnestly contended that the evidence falls short of showing that, at the time of the payment of the money or the transfer of the property by the bankrupt to the appellant, the latter had reasonable cause to believe that the payment or the transfers would effect the preference prohibited by the Bankruptcy Act.

The bankrupt was operating certain oil wells, and the appellant was engaged in the business of furnishing supplies and machinery for such wells, and was operating stores for distribution at Bakersfield, Taft, and Maricopa, in Kern county, Cal. The appellant's account with the bankrupt began February 23, 1909. In May, June, and July, 1910, the appellant received from the bankrupt notes aggregating $12,726.68 in payment for goods sold, and thereafter it sold the bankrupt additional goods on open account in July to the amount of $3,547.23, in August $2,920.76, and in September $65.54. The notes as they were received were indorsed and discounted by the appellant at its bank. On January 10, 1910, the appellant's general manager notified the manager of its store at Taft that he might deliver the bankrupt supplies to the amount of $1,500, and that, if more than that were desired, it would be necessary to communicate with the head office at Los Angeles. The general manager wrote:

"They are owing us considerable money, and they have not acquired the habit of discounting their bills, which is our reason for the limited credit."

On January 12th, the general manager wrote to the store at Bakersfield stating the amount of the open account, and adding that the appellant felt that this amount was quite enough providing the information which was given by the district manager at Bakersfield was correct, that the bankrupt was owing considerable sums for lumber bills, and that there were creditors for other smaller bills who were not able to get their money. The letter called for a report as to the holdings of the bankrupt in that district. On July 22, 1910, the appellant's general manager notified all its stores in Kern county that the state of the account with the bankrupt was such that goods could only be delivered to it in small quantities, not exceeding $100, and that anything in excess of that was to be referred to the Los Angeles office. On August 22d, the secretary of the appellant wrote to the general manager and said:

"They haven't taken care of their note due to-day. We are simply giving you this information that you may be in touch with the matter."

On receipt of this letter, the general manager indorsed thereon:
"Keep after them twice a day, and make them come through."

This note so referred to, which fell due on August 22, 1910, for $2,868.15, was not paid, and the appellant was required to take it up at the bank. On September 21, 1910, the appellant notified all its stores in Kern county that the bankrupt was privileged to buy only supplies for emergency requirements, not exceeding $50 in any one order, and that, if it wanted anything in excess thereof, the matter was to be communicated to the head office at Los Angeles. On October 18, 1910, the general manager wrote his district manager at Taft, as follows:

"The Cleveland Oil Company owe us considerable money. They are not in a position to supply the ready cash. Their stock is almost worthless from a stock market view, the last sales being passed at 2¾ cents. They are endeavoring to arrange the company on a good financial basis, but that will take some time."

The letter refers to the offer of the bankrupt to return to the appellant certain casings which had been purchased, and which the appellant agreed to receive as secondhand goods and credit on the account less 25 per cent. of cost price.

At the time when the cash payment of $2,000 was made, which the court and the referee found to have been a preference payment, the bankrupt was unable to meet the payment of its debts. It owed the appellant about $20,000. Its promissory notes to the appellant had been dishonored, and had been paid by the appellant and had been returned to it by the bank at which they had been discounted. Before that payment of $2,000 was obtained, according to the undisputed testimony, the appellant made repeated and urgent demands upon the bankrupt for money, and the latter had made promises of payment thereof for several weeks prior thereto. Under all the circumstances as shown by the testimony and the correspondence, we find no ground for disturbing the decision of the referee and of the court, or for holding that the facts that came to the knowledge of the appellant were insufficient to show that it had reasonable ground to believe that the bankrupt was insolvent at the date of the first payment, and that the effect of that payment was to give a preference. The facts were sufficient to put a reasonably prudent man upon inquiry to ascertain the financial condition of the debtor. In re Dorr, 196 Fed. 292, 116 C. C. A. 112; In re Thomas Deutschle & Co. (D. C.) 182 Fed. 435. That no such inquiry was made in this case is explainable by the fact that, at the beginning of the dealings between the appellant and the bankrupt, the former demanded and obtained from the president of the latter his individual guaranty of the payment of all the debts that might be incurred by his corporation in its dealings with the appellant.

The judgment is affirmed.