### In re SOLOF et al.

### SABIN v. WESTERN DRY GOODS CO.

(Circuit Court of Appeals, Ninth Circuit. November 3, 1924.)

No. 4323.

**1. Bankruptcy ⚖️166(4)—Reasonable cause to believe payment would effect a preference must be more than ground for suspicion.**

To constitute reasonable cause to believe that a payment made by a debtor would effect a preference there must be more than ground for suspicion.

**2. Bankruptcy ⚖️166(4)—Mercantile creditor receiving payments in usual course of business held not chargeable with reasonable cause to believe preference would result.**

Where bankrupts for years had conducted an extensive mercantile business, with good credit standing, and had during the four months prior to bankruptcy paid out in bills $168,000, and purchased merchandise on credit to the amount of $111,000, a mercantile creditor which during that time received 26 payments in the usual course of business held not chargeable with reasonable cause to believe that a preference would be effected thereby.

**3. Bankruptcy ⚖️228—Court not bound by finding of referee from admitted or established facts.**

Where the finding of a referee is a deduction from established facts or uncontradicted evidence, the judge is at liberty to draw his own inferences and deduce his own conclusions.

Appeal from the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

In the Matter of Max and Esther Solof, as individuals and as copartners doing business as the People's Cash Store, bankrupts. From an order of the District Court allowing the claim of the Western Dry Goods Company, R. L. Sabin, trustee, appeals. Affirmed.

Sidney Teiser, of Portland, Or., for appellant.

Wm. B. Layton, of Portland, Or., and Nelson R. Anderson, of Seattle, Wash., for appellee.

Before GILBERT, ROSS, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. The Western Dry Goods Company, a wholesale dry goods house of Seattle, Wash., filed a claim for approximately $20,000 against the bankrupt estate of Max and Esther Solof, doing business under the name and style of the People's Cash Store, at Eugene and Salem in the state of Oregon. The trustee in bankruptcy objected to the allowance of the claim on the ground that certain payments received by the claimant within four months prior to the filing of the petition in bankruptcy constituted voidable preferences. The referee sustained the objection and disallowed the claim until such time as the preferences should be surrendered. On petition for revision, the court below set aside the decision of the referee and allowed the claim as presented. From the latter order the present appeal is prosecuted.

A person is deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition or after the filing of the petition and before

the adjudication, made a transfer of any of his property, and the effect of the enforcement of such transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class, and if the person receiving the transfer or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of the transfer would affect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person. Bankruptcy Act, §§ 60a, 60b (Comp. St. § 9644). It is further provided that the claims of creditors who have received voidable preferences shall not be allowed unless such preferences are first surrendered. Section 57g (section 9641).

In discussing the questions of insolvency and reasonable cause to believe that a preference was intended, the court below said:

"It is difficult if not impossible to ascertain from the record with any degree of accuracy the financial status of the bankrupts at any time within the four months' period, although reasoning back from the value of the assets as inventoried by the receiver, the claims filed against the estate, and various estimates and deductions from the imperfect books of the bankrupts offered in evidence it fairly appears that they were during that period insolvent, but in my judgment the evidence does not show that the claimant had reasonable cause to so believe at the time it received such payments nor that they would constitute a preference."

[1] We will assume, as did the court below, that insolvency was proven, and direct our attention to the remaining question in the case. In this connection, we are admonished that reasonable cause to believe means something more than reasonable cause to suspect.

"It is not enough that a creditor has some cause to suspect the insolvency of his debtor; but he must have such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency, in order to invalidate a security taken for his debt. To make mere suspicion a ground of nullity in such a case would render the business transactions of the community altogether too insecure. It was never the intention of the framers of the act to establish any such rule. A man may have many grounds of suspicion that his debtor is in failing circumstances, and yet have no cause for a well-grounded belief of the fact. He may be unwilling to trust him further; he may feel anxious about his claim, and have a strong desire to secure it—and yet such belief as the act requires may be wanting. Obtaining additional security, or receiving payment of a debt, under such circumstances is not prohibited by the law. Receiving payment is put in the same category, in the section referred to, as receiving security. Hundreds of men constantly continue to make payments up to the very eve of their failure, which it would be very unjust and disastrous to set aside. And yet this could be done in a large proportion of cases if mere grounds of suspicion of their insolvency were sufficient for the purpose." Grant v. First National Bank, 97 U. S. 80, 24 L. Ed. 971. See, also, Stucky v. Masonic Savings Bank, 108 U. S. 74, 2 S. Ct. 219, 27 L. Ed. 640.

True, the court was there discussing the question of reasonable cause to believe a person insolvent, but the same considerations apply to the question of reasonable cause to believe that a preference was intended. Tumlin v. Bryan, 165 F. 166, 91 C. C. A. 200, 21 L. R. A. (N. S.) 960. The court there said:

"But a belief that a debtor is insolvent is a very different thing from the belief referred to by the statute—'reasonable cause to believe that it was intended' by the payments to give a preference. It may often happen that one, though in fact insolvent, will continue his business and make payments in the usual way, without a thought of preferring one creditor to another, and with the hope and belief that he would finally be able to pay all. If these payments were made by the firm, without the thought of injuring other creditors, and in the belief that it would be able to pay them all, the defendant cannot be charged with reasonable cause to believe that a preference was intended. When a debtor pays, and a creditor receives, the amount of a just debt, the natural presumptions are in favor of the good faith of the transaction. To let the mere fact of the bankruptcy of the debtor within four months make the transaction involved voidable would be to create uncertainty and uneasiness as to the probable result of every settlement between debtor and creditor. Reasonable cause to believe that a preference was intended cannot be held to be proved by circumstances that would merely excite suspicion. And circumstances may seem suspicious after the bankruptcy occurs that would not appear unusual at the time

of their occurrence, and would then have presented no 'reasonable cause' on which to found a belief of intended preference. Merchants and other business men constantly continue to make payments up to the very eve of failure, and it would be disastrous to have them set aside on slight proof or mere suspicion."

[2] These decisions are controlling here. Counsel for appellant directs our attention to a large number of, what he terms, "badges of reasonable cause to believe," such as information contained in a financial statement; advice to the debtor to make no large payments to creditors; to make payments on a pro rata basis only; refusal to ship further goods; accepting return of merchandise; information that creditors were pressing; protested checks and trade acceptances; requirement that payments be made in cash or by cashier's check; extensions requested; failure to inspect books when the opportunity presented itself; and an intimate knowledge of the business affairs of the debtors. All these circumstances may, and doubtless do, indicate that the creditor was apprehensive as to its claim; but they do not necessarily prove that it had reasonable cause to believe that a preference was intended. Other testimony in the case throws some light on the general situation. The bankrupts had conducted a large and extensive business for some years prior to bankruptcy. So far as the record discloses, no question as to their financial standing arose until late in the year 1922 or early in 1923. They continued to conduct their business in the usual and ordinary course, up to the filing of the involuntary petition against them. During the four months' period, or between February 1 and June 6, 1923, they paid to creditors on open account, notes payable, and trade acceptances, the sum of approximately $168,000, and purchased merchandise, on credit, to the amount or value of approximately $111,000. Were creditors to whom these vast sums were paid all preferred, and were wholesalers selling merchandise on credit to a concern of known insolvency or even of questionable solvency? These questions suggest their own answer. It may be urged that the appellee had knowledge of facts not possessed by other creditors, but we are not convinced that such was the case. In any event, it cannot be said that a creditor receiving approximately 50 per cent. of its claim, in 26 different payments running over a period of four months, had reasonable cause to believe that a preference would result or was intended.

[3] Certainly the trial court was justified in finding to the contrary. But it is said that the finding on conflicting testimony by the referee who heard the parties and witnesses testify, observed their demeanor, saw their manner of testifying, and noted their general appearance and actions on the stand, should not be set aside by the reviewing judge who had none of these opportunities. No doubt, findings by a referee in bankruptcy are presumptively correct and will not be disturbed, unless they are clearly against the weight of the evidence, or some obvious error of law has intervened in its application. This rule, however, has little application to inferences to be drawn from admitted facts. In the present case, if every controverted question of fact was resolved in favor of the trustee, the question still remained, was a preference intended, and the court was fully as competent to determine that question as was the referee, and had the same opportunities. In Ohio Valley Bank Co. v. Mack, 163 F. 155, 89 C. C. A. 605, 24 L. R. A. (N. S.) 184, Judge Lurton said: "Much in both cases must depend upon the character of the finding. If it be a deduction from established fact, the finding would not carry any great weight, for the judge, having the same facts, may as well draw inferences or deduce a conclusion as the referee." So in Walter v. Atha (C. C. A.) 262 F. 75, it was held that while a finding of fact by a referee on conflicting evidence will not be disturbed, unless there is cogent evidence of mistake, yet, if the finding be a deduction from established facts or uncontradicted evidence, the judge is at liberty to draw his own inferences and deduce his own conclusions. See, also, Baumhauer v. Austin, 186 F. 260, 108 C. C. A. 306.

We find no error in the record, and the order of the court below is therefore affirmed.