**BOSTIAN v. LEVICH.**
No. 12397.

Circuit Court of Appeals, Eighth Circuit.
March 15, 1943.

Warren S. Earhart, of Kansas City, Mo. (Lester W. McRoberts and Jeter & Earhart, all of Kansas City, Mo., on the brief), for appellant.

Irvin Fane, of Kansas City, Mo. (James H. Ottman and Johnson, Lucas, Graves & Fane, all of Kansas City, Mo., on the brief), for appellee.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

JOHNSEN, Circuit Judge.

A trustee in bankruptcy seeks to recover, as preferences, the amounts of some checks totalling $6,204.26, issued by the bankrupt to his father-in-law within four months prior to bankruptcy, and an additional sum of $350 given to the father-in-law during the same period for application upon a note held by a local bank, which the father-in-law had signed with the bankrupt.

The trial judge, to whom the case was tried without a jury, found that the proceeds of the checks were not received in payment of antecedent credits or loans to the bankrupt, as the trustee contended, but in contemporaneous value exchanges for checks of the father-in-law, and further that, even if the transactions had constituted payments of credits or loans, there could be no recovery of them as preferences under section 60, sub. b, of the Bankruptcy Act, as amended, 11 U.S.C.A. § 96 sub. b, because the father-in-law did not have reasonable cause to believe that the bankrupt was at the times involved insolvent. The trustee argues on this appeal that the findings and judgment of the trial court are clearly erroneous.

From the evidence in the record, the trial court doubtless would have been justified in concluding that the bankrupt and his father-in-law had engaged in a general check-kiting scheme in order to make the bankrupt's bank-account more elastic; that the father-in-law had specifically agreed to hold the bankrupt's checks for a few days before depositing them for payment and that the transactions therefore did not constitute cash exchanges, but were equivalent to extensions of credit and payments of loans, within the rule of Security Trust & Savings Bank v. Wm. R. Staats Co., 9 Cir., 233 F. 514; that the father-in-law knew or had reasonable cause to believe that the bankrupt was at the times involved insolvent; and that the payment of the credit extensions or loans so made constituted voidable preferences as against the other creditors, except insofar as they might be affected by 11 U.S.C.A. § 96, sub. c. But the trial judge felt that the establishment of these facts depended materially upon testimony of the bankrupt, which he regarded as unworthy of belief. He declared: "I just do not believe much that Mr. Junsberg testified to in his deposition," and "One cannot have much regard for him and not much regard for his testimony."

On the other hand, the evidence on behalf of the father-in-law might properly be accepted by the trial judge as establishing the following facts: The father-in-law had assisted the bankrupt in getting started in the produce business by signing a note with him at the bank as a means of obtaining some working capital. Payments had been made upon this note out of the business. The father-in-law knew nothing about the general details of the business, but he had urged upon the bankrupt the desirability of keeping his credit good by not overdrawing his bank account. The bankrupt had never furnished him with any financial statements or reports, and, when he inquired generally from time to time as to how the business was going, the bankrupt always replied, "Pretty good". He believed that the bankrupt at all times had sufficient assets to cover his liabilities. Much of the bankrupt's produce business was done between midnight and the early morning hours. In order to obtain the release of cars of produce from the railroad company as they came in, the bankrupt had to pay the freight charges in cash. On a few occasions, he directly cashed a check with his father-in-law for this pur-

pose. On most of the occasions involved, however, he merely exchanged checks and took his father-in-law's check to the latter's bank, which was nearby, or had one of the latter's employees do so, and obtained the cash proceeds therefrom. He told the father-in-law that he always had sufficient funds in his account to cover the checks, except possibly for an occasional nominal deficiency, and that the use of the father-in-law's check, until he had deposited the proceeds of the night's business early the following morning, would simply prevent the draining or depletion of his protective bank balance. The father-in-law believed that the checks were good when the exchanges were made; he never agreed to withhold the depositing of any of them; and he always sent them to the bank as soon as he made his next deposit in the regular course of his own business, which would usually be the following day or the day thereafter.

There are other circumstances and incidents in the record which are capable of varying interpretations. Enough has been said, we think, to indicate that the purpose of the parties in making the check exchanges and their significance as cash or credit transactions, were, in the situation here, fundamentally questions of fact and not merely of law. Similarly, if the exchanges had been found to be credit or loan transactions, the bankrupt's efforts to continue the check-kiting practices might be a circumstance tending to show reasonable cause for believing that he was insolvent, as suggested in First National Bank of Philadelphia v. Abbott, 8 Cir., 165 F. 852, 860, but it would not be one that legally compelled such a conclusion. Again, the fact that, during the course of the transactions, one or two of the bankrupt's checks had been returned for insufficient funds might also properly tend to show reasonable cause for believing that insolvency existed, as declared in Brown Shoe Co. v. Carns, 8 Cir., 65 F.2d 294, 297, but it could not be held to be conclusive upon the trier of the facts. Further, the fact that the bankrupt had handed the father-in-law $350 with which to make a payment upon the note, which the latter had signed as surety for the bankrupt, could not be declared to constitute a voidable preference benefit in favor of the surety, as a matter of law, even under the rule in Lazarus v. Eagen, D.C. M.D. Pa., 206 F. 518, but would have to be weighed in connection with the father-in-

law's testimony that the bankrupt had merely requested him, as a convenience, to deliver the funds to the bank, and that he did not believe that the bankrupt was then insolvent. Neither singly nor collectively would these circumstances or the evidence generally permit of an absolute declaration on our part that the check exchanges were credit or loan transactions, and that the father-in-law had reasonable cause to believe that the bankrupt was insolvent and that a preference was being effected.

The trier of the facts, in a suit to avoid a bankruptcy preference, is not required to evaluate the circumstances and incidents involved on the mere basis of the subsequent failure, but may properly appraise the character, purpose and reasonably apparent effect of the transaction as of the time that it occurred. Harrison v. Merchants National Bank, 8 Cir., 124 F.2d 871, 873.

While the trial court might well, no doubt, have reached a different conclusion, we have no right to declare that its findings here are clearly erroneous within the intendment of Federal Rules of Civil Procedure, rule 52(a), 28 U.S.C.A. following section 723c, and the judgment must accordingly be affirmed.