[Civ. No. 13737.   First Dist., Div. One.   June. 3, 1948.]

VIOLA LANGER, Respondent, v. MARTIN P. LANGER et al., Appellants.

Leslie C. Gillen for Appellants.

Morris Oppenheim for Respondent.

WARD, J.—Plaintiff filed a quiet title action against her son which was changed by amended complaint to an action praying for a decree that the legal title to certain property was held in trust for her use and benefit. The property was purchased from E. Cittrino on March 28, 1938, title being taken in the name of defendant Martin P. Langer. The complaint alleges ''That the entire consideration for the transfer of the said real property and for the execution of said grant deed to the said MARTIN P. LANGER was paid by plaintiff; and that no part of the consideration therefor was paid by the defendant MARTIN P. LANGER either to the said E. CITTRINO or to plaintiff, or at all; and that the said defendant MARTIN P. LANGER, by reason of the premises, took the legal title to said real property in trust for the use and benefit of plaintiff.'' The court found in accord with the quoted portion of the complaint. Other findings are to the same effect.

From 1923 to about 1935, the mother was engaged in buying, operating and selling small theaters. The son started as a youth to work as a motion picture operator, but eventually managed theaters. Subsequently he worked as a taxi driver.

As appears in the record, the mother made an affidavit to the Public Welfare Department for the purpose of obtaining a pension for her husband, also one, during the war, to assist her son in obtaining a release from the army. Another affidavit, presented to a draft board, stated that her son was her sole support. The mother made no income tax returns but left such matters to her son. According to her testimony, whatever money she made from regular or irregular transactions

she turned over to the son except during a period when he was out of the state.

As stated, title to the property was taken in the name of Martin P. Langer. It consisted of a lot in San Francisco with a house on the street and a cottage in the rear. The son made a down payment thereon of $1,000; the balance was borrowed from a building and loan association. The plaintiff mother resided in the premises at the front, where she maintained a rooming house. The defendant son, with his wife, resided in the cottage at the rear. At the time of the purchase the mother had outstanding against her one judgment. Neither plaintiff nor defendants paid rent to the other party.

The evidence is conflicting on all issues. In view of her neglect to demand an accounting, the claim that the mother made a gift to her son might be true as to part of the funds she entrusted to him. Likewise the son's neglect to demand the income or rental from the ''front'' dwelling indicates that the son made no claim of ownership to the premises until he gave a power of attorney to his wife who demanded that plaintiff vacate the same. The following testimony appears in the record: ''Q. That was while Martin was back in the camp? A. That is right, correct. Q. You didn't get out? A. I didn't get out. She told me to get out. Q. All right. Did you see Martin shortly after that? A. In two days later— he flew from the camp, in an emergency, and he came, and when I talked to him he told me he had nothing to say any more. Q. When he came to your house where were you? A. I am in my room, in my house. Q. What did Martin do and say; tell us what happened? A. When he came to me he told me I have got to get out. I said, 'I am going to sleep in this bed and die in this bed.' He said, 'No, we will see.' He took down my clothes and threw me in the kitchen and told me to stay in the kitchen. Q. He pulled you out of bed? A. He pulled me out of bed and threw me in the kitchen. Everybody knows that. . . . Q. At that time did you ask Martin for a deed to the property? A. He was living with me. Q. Did you ask him for a deed to the property? A. Yes. He said, 'It is in my name and it is my property now.' I say, 'Martin, I buy the property and you know it is not yours.' He said, 'It is in my name, and I am going to keep it.' ''

It is plaintiff's contention that when a transfer of real property is made by one person, and the consideration is paid by another, a trust is presumed in favor of the person paying the consideration. (Civ. Code, § 853.) Defendants primarily

contend that the findings are not supported by the evidence. In addition it is suggested: 1. That whatever was paid by the mother was a gift to the son, and 2. That the mother perpetrated a fraud upon her creditors and that under such conditions an action to maintain a resulting trust may not be maintained.

The merits of this appeal must be decided upon the facts. Unfortunately both sides, during the trial and on appeal, seem to feel that blackening the reputation of the other side as regards traits, habits or acts will avail in the determination of the sufficiency of evidence to support findings. A reviewing court may not deem as unworthy of belief evidence which a trial court, having seen the parties and observed their demeanor and manner as witnesses, has accepted.

All persons who are able to make known their perceptions, including those convicted of crime, may be witnesses (Code Civ. Proc. § 1879), except those designated in section 1880, but the credibility of any witness may be questioned. "A witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character for truth, honesty, or integrity, or his motives, or by contradictory evidence." (Code Civ. Proc., § 1847.) "A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony." (Code Civ. Proc., § 2051.) ■ A degraded character may be a competent witness though not credible. (*People* v. *Cox,* 66 Cal.App. 287 [226 P. 14]; *Loughran* v. *Loughran,* 292 U.S. 216 [54 S.Ct. 684, 78 L.Ed. 1219].) ■ The trier of the facts, not a reviewing court, has the privilege of balancing the scales to evaluate the evidence. The sins, or rather errors of the past may be directly related and connected, or they may be independent and irrelevant, to the issue presented.

■ The real question is the sufficiency of the evidence to sustain the findings. The court was justified in finding that the mother did not place the deed to the property in the son's name to defraud creditors. The court asked the following question: "You didn't put the lots in your son's name just to get away from the judgment?" To which plaintiff answered: "No." It subsequently developed that the mother requested

the son to deed the property to her while the judgment against her was still in existence. In fact the record indicates that the judgment is still outstanding. It is a reasonable inference from the evidence that the money delivered by the mother to her son was used in the purchase of the property. In this connection the daughter testified that this was the fact, and the mother testified that she made the monthly payments to the building and loan company and paid for certain remodelling. There is also evidence from various witnesses that after the title had been taken in the name of the son, the son frequently stated to his mother in the presence of third parties that the property was hers, and that she could have a deed at any time. From the evidence herein this court is not in a position to say as a matter of law that the funds turned over to the son by the mother constituted a gift. So far as the contention that a gift of the money was made, this was totally inconsistent with the testimony of the mother, which the court believed. In all respects, as outlined above, the court was justified in rendering judgment for the plaintiff.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied July 3, 1948, and appellants' petition for a hearing by the Supreme Court was denied July 29, 1948.