In the Matter of Robert B. STEINBERG, Bankrupt.

No. 59563.

United States District Court
S. D. California, Central Division.
Jan. 16, 1956.

Craig, Weller & Laughran, by William E. Bartley, Los Angeles, Cal., for the trustee.

Martin S. Stolzoff, Beverly Hills, Cal., Joseph J. Cummins, Los Angeles, Cal., for the respondent.

YANKWICH, Chief Judge.

Robert B. Steinberg petitioned on January 27, 1954, for an arrangement under Chapter 11 of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. The petition was approved and referred to one of the Referees in Bankruptcy on the same day. An adjudication was made on April 21, 1954.

H. M. Gerson, the duly elected and acting Trustee of the estate, on July 9, 1954, filed a petition, which was amended on September 22, 1954, to determine the validity of certain deeds of trust and a chattel mortgage executed by the debtor. After hearings on various dates in 1954 and 1955, the Referee on *April 21, 1955,* filed his Findings and Order determining that Harold Kirsch, the beneficiary under the instruments, received a voidable preference under § 60, sub. a(1) of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. a(1), by the delivery of certain instruments described as

(a) Deed of trust executed and verified on the 15th day of January, 1954, covering Lot 63 of Tract 9998, recorded on the 18th day of January, 1954, in Book 43617, page 46;

(b) Deed of trust as to Lot 39 of Tract 14494 executed and verified on the 15th day of January, 1954, and recorded on the 18th day of January, 1954, in Book 13617, page 47;

(c) A chattel mortgage executed covering certain personal property, office furniture and equipment, located at 1244

South La Cienega Boulevard, Los Angeles, California, recorded on the 18th day of January, 1954, in Book 13617 at page 48.

The Order specifically held that the "trust deeds and chattel mortgage are voidable and unenforceable against the trustee." Before me is Kirsch's petition *filed on May 10, 1955,* to review the Order.

## I
### The Power to Entertain Untimely Reviews

The trustee has questioned the right of the Court to entertain this review because it was filed after the expiration of the time limit (ten days) provided in the Bankruptcy Act, and no extension has been applied for or granted. Bankruptcy Act, § 39, sub. c, 11 U.S.C.A. § 67, sub. c.

The Referee declined to file a certificate because of the untimeliness of the petition for review. When directed to file the certificate, the question of the timeliness was reserved. To the question propounded by the Court whether the Referee would have granted the extension, if applied for before the expiration of the ten-day period, his answer is:

"It is not easy for me to answer. If counsel had set out in his petition some compelling reason, such as illness, other court commitments or even had set out that he had planned a vacation, I probably would have granted an extension. In the absence of any showing, I would have denied an extension upon the grounds that I set out in the order I quoted heretofore. Time has become an element in this case. The matter of this alleged preference should determine whether or not the trustee shall proceed with a plenary action to recover the personal property held adversely by the respondent. The filing of such an action normally should wait until this suit is finally determined. Aside from this matter, the estate has been fully administered."

Thus, the problem (an important one in the administration of bankruptcy), is again presented whether, absent an extension of time, the Court may entertain a petition for review.

The Referee, experienced and learned in the law, seems to be of the view that in case of untimeliness, the Referee should refuse to certify and that a special review should be taken of the Order of Refusal to determine whether there was abuse of discretion. I do not agree. The better policy is to entertain the review and leave it to the Judge to determine whether, in view of all circumstances, the matter should be heard on the merits.

I had thought that the matter was settled by the Opinion filed in 1945 in Matter of C. & P. Co., D.C.Cal., 63 F. Supp. 400, 403–404. The Referee frankly states in his certificate that he was not familiar with the ruling. Although many attorneys appearing for trustees and some of the referees have questioned it, in a recent opinion I reaffirmed the ruling in the case to the effect that the referee and the Judge of the Court have the right to hear and entertain a review out of time. In re F. P. Newport Corp., D.C.Cal.1956, 137 F. Supp. 58.[1]

The ruling was based upon an analysis of the Section and of the decision of the Supreme Court in Pfister v. Northern Illinois Finance Corp., 1942, 317 U.S. 144, 63 S.Ct. 133, 87 L.Ed. 146. In that case, the Supreme Court, after referring to the discretion which, at all times, existed in the bankruptcy court, *as a court of equity,* to entertain an untimely re-

---

1. I maintained this position in an article "A Judge's Comment on Bankruptcy Reviews", 1950, 9 F.R.D. 575, 578–579; 24 Journal of the National Referees in Bankruptcy, 1950, 50, 58. Other District Courts have supported these conclusions: In re Sadler, D.C.N.Cal.1952, 104 F. Supp. 886, 889; In re Daigle, 1953, D.C. Maine, 111 F.Supp. 109, 111.

view, stated that the object of the section *was not* to do away with the power or restrict it:

"Section 39, sub. c, was intended to establish definitely and clearly the proceeding for review of a referee's order in the interest of certainty and uniformity but the legislative history reveals no intention to change the preëxisting rule as to power. Indeed, the Chandler Act by the amendment of § 2(10) sought to conform the act to the prevailing practice as to the bankruptcy court's exercise of its appellate jurisdiction over referee's orders. We do not think Section 39, sub. c, was intended to be a limitation on the sound discretion of the bankruptcy court to permit the filing of petitions for review after the expiration of the period. The power in the bankruptcy court to review orders of the referees is unqualifiedly given in § 2 (10) [11 U.S.C.A. § 11(10)]. The language quoted from Section 39, sub. c, is rather a limitation on the 'person aggrieved' to file such a petition as a matter of right.

"The review out of time of the Commissioner's Orders is then a matter for the discretion of the District Court." Pfister v. Northern Illinois Finance Corp., supra, 317 U. S. at page 152, 63 S.Ct. at page 139.

Before and after this ruling, lower Federal Courts have been very liberal in entertaining petitions for review, whether a formal extension of time had been obtained or not.[2] Indeed, the Court of Appeals for the Fifth Circuit has held that where the petition is out of time, and the Court, nevertheless, proceeds to rule on the merits, its power to hear and determine cannot be questioned:

"* * * The Court below in ruling against the appellant's petition for review noted that same had been filed late, but the order does not show what view the Court may have taken about the question of good cause for an extension of time, although the Court's decision clearly was on the merits of appellant's petition for review. * * * The Court could have dismissed said petition for review on the ground of the belated filing date, but that was not done, and we think that the only question is whether the Court had discretion to hear the petition for review in spite of appellant's failure to file same within the time prescribed in the above section of the law. That provision of the law is not jurisdictional, and notwithstanding the appellant's default, the Court had the power to hear and determine said petition for review." Oppenheimer v. Oldham, 5 Cir., 1949, 178 F.2d 386, 390; and see, Thomas Corporation v. Nicholas, 5 Cir., 1955, 221 F.2d 286, 289, note 5.

It should be added that the Bankruptcy Act specifies, among the duties of the Clerk of the Court, that he shall

"deliver to the Referees all papers which may be referred to them." Bankruptcy Act, § 51(4), 11 U.S.C.A. § 79(4).

General Order 20, 11 U.S.C.A. following section 53, states that, after reference, papers, other than those which call for action by the judge,

"*may be* filed either with the referee or with the clerk."

The filing of a petition for review, even out of time, *cannot*, therefore, *be refused.* In re Sadler, D.C.Cal.1952, 104 F.Supp. 886, 889.

## II

### Suggested Procedures on Untimely Reviews

As to the situations which may arise following the filing of a petition out of time, the preceding discussion calls for

---

**2.** See references cited in Note 1, and see cases cited in Pfister v. Northern Illinois Finance Corp., supra, 317 U.S. at page 153, 63 S.Ct. 133, Footnote 16.

the following conclusions and declarations of policy:

Notwithstanding any action or failure to act on the part of the referee, the Court *has the right* to entertain the petition.

Its discretion being at least co-equal with that of the referee, the reviewing court *should not be* called upon to exercise its own discretion until a certificate of review is before it.

A truncated review dealing only with the question of the referee's exercise of discretion *would not* give the Court a proper perspective of the background upon which the exercise of the right to review depends.

To the contention that this method involves additional work for the referee in preparing a certificate in a case which he thinks is without merit and in which he would have, if asked, declined to grant an extension, the answer is that given in this case, that the work could be minimized by allowing the referee instead of summarizing the facts, to transmit to the court, *at the expense of the reviewing party*, a transcript of the record.

To the suggestion that the Court *should not* be put to the additional labor, the answer is that such a problem *should be resolved by the Judge* rather than by the referee.

■ We should, at all times, bear in mind that bankruptcy courts are courts of equity. The attitude of many bankrupts is *trying* on the referees, as it is on the Judges. But ours is the duty to maintain the confidence in our courts by being generous in allowing reviews in bankruptcy, even at the risk of additional labor to trustee's counsel, referees and ourselves. Short cuts are desirable, but not at the cost of distrust in the power of the chancellor to give succour. For it belongs to a court of chancery "to examine the conscience". [Prisot, C. J., in J. R. v. M. P., Common Bench, 1459, Y. B. 37, Henry VI, fol. 13, placitum 3, Chafee and Simpson, Cases in Equity, 1934, Vol. I, 16, 17]

■ In the past I have warned that nebulous equity principles should not be allowed to override acquired rights in bankruptcy, Yankwich, A Judge's Comments on Bankruptcy Reviews, supra, 9 F.R.D. at page 586; In re Quartz Crystal Products Co., D.C.Cal.1947, 71 F. Supp. 949, a warning which was re-echoed recently by our Court of Appeals. Colonial Trust Co. v. Goggin, 1955, 9 Cir., 230 F.2d 634. Nevertheless, this attitude *does not* stand in the way of a generous policy in *hearing* disputes in bankruptcy.

Criticism of the results achieved in judicature is inevitable in any society. Indeed, it is salutary in a democratic society. A great Justice, Josiah Brewer, has stated:

"True, many criticisms may be, like their authors, devoid of good taste, but better all sorts of criticism than no criticisms at all. The moving waters are full of life and health; only in the still waters is stagnation and death." [15 Nat. Corp.Rep. 849]

However, to the necessary, or even desirable, criticism of the *results*, we should not add the unnecessary and undesirable criticism of *method* by refusal to hear. Civilized Western society has observed the Biblical injunction:

"Hear the causes between your brethren." (Deut. 1:16)

All judicial action is based on the power to hear and determine. *If we hear, we need not be concerned* with dissatisfaction about *determination*. But *if we hear not*, we may be charged with avoidance of responsibility. As our democratic system envisages the possibility of error, the power to review should be granted freely *when there is discretion*.

## III

### The Problem of Preference

■ So we consider the merits of the petition. When Findings present purely a question of fact, they cannot (and

*should not*) be overturned unless we are satisfied that they are clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.; General Order 37; Gold v. Gerson, 9 Cir., 1955, 225 F. 2d 859. See Yankwich, Impact of the Federal Rules of Civil Procedure on Bankruptcy, 1954, 42 Cal.L.Rev. 738, 743–744; ibid, 1954, 20 Journal National Association of Referees in Bankruptcy, 75, 76–77.

▮▮ The only question involved is the existence of a preference under Section 60, sub. a(1), 11 U.S.C.A. § 96, sub. a(1). Subsections b and c of Section 60, 11 U.S.C.A. § 96, sub. b and c, dealing with the avoidance of preferences, as they now read, have eliminated the element of knowledge that the "transfer would affect a preference" which, under the prior statute, was a condition precedent to avoidance.

"All it requires is that the creditor have reasonable cause to believe that (a) the debtor is insolvent and (b) that the effect of the transfer be to give to the creditor a larger share of the assets than other creditors in his class would receive. The first element then relates directly to the knowledge of the creditor. The second is purely a matter of fact, regardless of the intent of the debtor.

"In applying it the courts have eliminated circumstances which merely arouse doubt, or which, though they might appear ominous after bankruptcy, are not of a character to arouse suspicion at the time the transaction is entered into.

"In assaying each situation, the courts, of necessity, place themselves in the position in which the person receiving the preference is supposed to be. And if they find that circumstances were such that persons exercising ordinary judgment would have been compelled to act, they find reasonable cause to exist." [Yankwich, Preferences Under Section 60 of the Bankruptcy Act, 1952, 3 Hastings Law Journal, 93, 109]

And see, R. H. Herron Co. v. Moore, 9 Cir., 1913, 208 F. 134; National Bank of Bakersfield v. Moore, 9 Cir., 1918, 247 F. 913; In re Gordon, 9 Cir., 1930, 38 F. 2d 73; Pender v. Chatham Phenix National Bank & Trust Co., 2 Cir., 1932, 58 F.2d 968; Sears v. Schlotzhauer, 9 Cir., 1939, 106 F.2d 952. Conversely, unless all the elements of a preference exist, transfers will not be set aside: Barry v. Crancer, 8 Cir., 1951, 192 F.2d 939; Clark v. Mutual Lumber Co., 5 Cir., 1953, 206 F.2d 643; Lang v. First National Bank of Houston, 5 Cir., 1954, 215 F.2d 118.

We turn now to the facts relating to the preference. The Bankrupt was a public accountant, interested in other apparently legitimate businesses. In reality, he seems to have been engaged in questionable transactions, *in one of which Kirsch became a joint venturer.* It related to the alleged purchase, *through influence,* and *admittedly* outright corruption, of State liquor licenses at a low figure and their resale at a high profit.

Kirsch is a Certified Public Accountant who in July, 1953, went to Steinberg in search of office space. This resulted in an arrangement whereby he occupied space in Steinberg's Los Angeles office for a rental of $27 per month. In October of 1953, Steinberg told Kirsch that he had an opportunity to purchase liquor licenses for $3,000, which could be resold for from $4,000 to $5,000, and that he was looking for some one to put in half the money. Kirsch advanced $1500 for which Steinberg gave him his promissory note, with the understanding that he was to receive 50% of the profit. He later received $2,000 from this transaction.

In October and November, 1953, Steinberg and Kirsch entered into other similar transactions. During these months, there were advances and alleged returns on the investments until the total invested by Kirsch amounted to $27,500. On

December 12, 1953, Kirsch, being concerned with the possible tax consequences of the transactions, asked and received a check in the sum of $6500, in order that a portion of the profits be reflected on his 1953 return. The check was later, on January 4, 1954, replaced by six checks for $1000 and one for $500. Payment on the larger check was stopped. The smaller checks were cleared through the account on January 8, 1954. On January 7, 1954, Kirsch called at the bank to make certain that the checks would be honored.

Discussions about securing the unpaid amount of Kirsch's investment and the alleged profits by chattel mortgage and deeds of trust were had during this period. The instruments were finally executed on January 15, 1954.

Steinberg insists that when the check for $6500 was given on account, Kirsch was told that there were no funds and that Kirsch agreed to hold it until a later date. He also testified that Kirsch *helped prepare* but refused to certify on October 31, 1953, a financial statement which was to be presented *to others*. Kirsch insists that the financial statement was presented *to him* and that he had nothing to do with its preparation. Steinberg also testified that the $6500 check was given after Kirsch and an attorney who represented him had stated that they would inform his wife of the transactions in which he was engaged. Kirsch and the attorney, who is also an attorney in this proceeding, Martin S. Stolzoff, deny this. They claim that they only spoke of the need for the wife's signature on the instruments. In this, as in other matters, the Referee evidently chose to believe Steinberg.

It is admitted that the check for $6500 was not honored. Whether he knew it at the time or not, Kirsch admits that after it was given he learned that it was given "against uncollected funds", and agreed to accept the smaller checks in exchange. The promise of a secured return of some $80,000 on an investment of $27,500 is, in itself, an ominous circumstance and warning. For legitimate businesses do not promise, much less *guarantee*, such return, a *trebling of an investment in a three-months period*.

Kirsch admits doing some accounting work on Steinberg's affairs after he began officing with him, for which he was paid on a *per diem* basis. A little inquiry on his part would have disclosed the shady and shaky nature of Steinberg's business ventures. Indeed, the discussions had with Maurice Bentley, who was interested in the matter with Kirsch, and Mr. Stolzoff prior to the execution of the instruments disclosed clearly the illegitimate nature of these transactions. Stolzoff did not represent himself as an attorney. According to his testimony, the question "was never brought up". He seemed to appear in the negotiations as a prospective investor in the speculations. Only later was his capacity as Kirsch's attorney disclosed. Steinberg opposed *all* suggestion that inquiry be made at the escrow company or the office of the Board of Equalization as to the reality and genuineness of the transactions. He feared, according to Stolzoff's testimony, that his "high contacts" in the Board, who were receiving "payments", "would be very embarrassed".

This was a warning to Stolzoff, who was both an attorney and an accountant, that the transaction, if real, was highly illegal and immoral. That he did not believe Steinberg's story about the use to which the money was being put is indicated also by the following statement made after the idea of an inquiry at the source *had been rejected:*

> "He also stated to me that he owned a substantial law and tax library. *I advised Mr. Steinberg that I doubted the fact of the liquor license transactions. I told him, in my opinion, the story did not hold water. I did not feel that liquor licenses in the quantities that Mr. Steinberg had spoken of had been purchased by Mr. Steinberg."*

Much of the testimony on behalf of Kirsch was directed at attempts to show that there was no *fraud, coercion or duress* on the part of Kirsch, Stolzoff or Bentley. This, if true, is unimportant. A preference does not cease to be such because *it is not coerced* by the creditor. Indeed, as to preferences of this type, the voluntariness of the act on the part of the debtor is immaterial. It is the aim of the law to protect creditors against his *voluntary* preferences, and the actual good faith of the creditor

"is not a defense, where reasonable cause to believe (that the debtor is insolvent) is shown." Lowell v. Chaisson, D.C.Mass.1924, 300 F. 219, 222.

Nor was this a case of fraudulent conveyance, Bankruptcy Act, § 67, 11 U.S. C.A. § 107. It was a preference case, and the questions before the Referee were: (a) Was there a preference over other creditors within the four-month's period, and (b) at a time when the debtor was insolvent? That it was a preference cannot be denied. It was made on January 15th, i. e., *twelve* days before January 27, 1954, the date on which the petition for arrangement under Chapter XI was filed. And, despite Steinberg's "front", as the Referee called it, he was hopelessly insolvent at the time. The nebulously secretive nature of the transactions, and Steinberg's failure to give strict accounting of the investments until pressed were evident to Kirsch. It was easy for him to make a thorough check. So the ultimate question was: Did he have reasonable cause to believe that Steinberg was insolvent? The Referee answered in the affirmative.

We have already indicated some of the badges of fraud and questionable dealing which should have put Kirsch on inquiry which would have disclosed Steinberg's dishonest criminality and insolvency. A reading of the entire record convinces us that the Referee summed up the situation correctly when,

at the conclusion of the lengthy hearings, he stated:

"I will have to find as a matter of fact that sometime in the latter part of December, that about the time of this $6500 check transaction, that Mr. Kirsch began to have some doubts as to the solvency of Mr. Steinberg and that sometime before January 14th he consulted with his attorney and also with Mr. Bentley and that this meeting of January 14th was arranged. * * * On the 14th of January, in the minds of Mr. Bentley and Mr. Kirsch and his attorney, there were undoubtedly very serious doubts as to the purported transactions involving liquor licenses and alarm as to the disposition that was made of the fund that Mr. Kirsch had turned over to Mr. Steinberg.

"So I would say that beginning with the $6500 check, whatever that date may be, that Mr. Kirsch was then in possession of sufficient information that should have placed him on inquiry as to Mr. Steinberg's solvency, and if that inquiry had been pursued, he would have discovered that Mr. Steinberg was at that time insolvent."

Granted that a mere suspicion is not enough, In re Solof, 9 Cir., 1924, 2 F.2d 130, 131; Harrison v. Merchants Nat. Bank, 8 Cir., 1942, 124 F.2d 871, 873, and that the Referee must, at all times, evaluate the transaction "as of the time that it occurred", Bostian v. Levich, 8 Cir., 1943, 134 F.2d 284, 287, we believe that the conclusion of the Referee and the consequent determination that there was a voidable preference was correct.

One gathers from the memoranda on file, (and counsel for Kirsch so stated at the oral argument) that it seemed shocking to them that the Referee should have preferred the word of a self-confessed criminal to the testimony of three reputable persons, one a member of the Bar.

The rules of evidence of the state in which the bankruptcy court sits govern. Rule 43(a), Federal Rules of Civil Procedure; General Order 36; In re C. & P. Co., D.C.Cal.1945, 63 F.Supp. 400, 408. The competency of a witness to testify is also determined by state law. Rule 43(a), Federal Rules of Civil Procedure. Under California law conviction of a felony is merely a ground for impeachment. California Code of Civil Procedure, § 2051. It *does not* call for the rejection of the testimony, but leaves it to the trier of facts to determine what, if any, weight should be given to it in the particular case, notwithstanding the prior conviction. As said by the California District Court of Appeals:

"A degraded character may be a competent witness though not credible. People v. Cox, 66 Cal.App. 287, 226 P. 14; Loughran v. Loughran, 292 U.S. 216, 54 S.Ct. 684, 78 L.Ed. 1219. The trier of the facts not a reviewing court, has the privilege of balancing the scales to evaluate the evidence. The sins, or rather errors of the past may be directly related and connected, or they may be independent and irrelevant, to the issue presented." Langer v. Langer, 1948, 85 Cal.App.2d 806, 809, 194 P.2d 81, 83.

So the Referee here was free to choose the version given by the bankrupt despite his admitted conviction of a felony and his low character. In reality, as the preceding discussion indicates, the case *did not* call for so clear a choice. For, as already indicated, many of the facts testified to by Steinberg find corroboration, either directly or indirectly, in the testimony of others. On the whole, the Referee was right in concluding that the transfers under discussion constituted a voidable preference.

The findings of the referee are adopted by the court and his order is affirmed. Formal order to follow.