[Crim. No. 4218. First Dist., Div. Two. July 11, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. ALEXANDER JAMES, Defendant and Appellant.

Ronald M. Sohigian, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and Michael R. Marron, Deputy Attorneys General, for Plaintiff and Respondent.

KAUFMAN, P. J.—Defendant appeals from a judgment rendered on a jury verdict finding him guilty of robbery in the second degree (Pen. Code, § 211). The contentions on appeal are that: (1) the evidence is insufficient to support the judgment; (2) the trial court erroneously admitted testimony of an incompetent witness; and (3) the prosecution was guilty of prejudicial misconduct.

The robbery occurred about 8:15 p.m. on March 26, 1962, at Weatherby's Seafood Restaurant in Eureka, after the restaurant had closed for the day. The owner, May Frank, was in the kitchen with her cook, Gladys Harrell, and a kitchen helper, Lillian Norton, while her husband, Fred, was sitting at the counter in front of the establishment reading a newspaper. As Mr. Frank read the paper, he was jabbed in the back by a hard object and turning around saw a man with a woman's nylon stocking pulled over his head and his right hand stuck in the pocket of his coat. The man told Mr. Frank not to go to the phone, to continue to read, and threatened to blow his head off if he made any attempt to move. Mr. Frank remained seated at the counter while the man walked through the dining room and kitchen.

The three women in the kitchen saw the man enter with his hand in his pocket and all thought he had a gun. He walked across the kitchen to Mrs. Frank and said: "This is a stickup. You won't get hurt if you do what I tell you." The man then told Mrs. Frank to get him the money and told the other women to stay in the kitchen so they would not get hurt. Mrs. Frank gave him $125 from a bank bag from in front of the restaurant, while her husband remained silent and motionless at the counter for fear the robber would get excited and start shooting. The robber took the money bag, went to the kitchen door to warn the two women to stay there, and left by the front door, after telling Mr. and Mrs. Frank not to make any attempt to call the law. Mrs. Frank watched him go around the side of the building from the large side window in the restaurant and saw that he waved whatever was in his pocket menacingly. The robber kept his hand in his pocket all the time and the nylon stocking remained over his head.

The police were called and arrived within 10 minutes after the robbery and obtained descriptions from witnesses. On March 28, all of the witnesses who had been present at the restaurant identified appellant as the robber. Several days later, the police tape recorded the voices of the appellant

and four members of the police department and played the tape for Mr. and Mrs. Frank and Mrs. Harrell. All three witnesses identified the appellant's voice as that of the robber. The tape was admitted into evidence, without objection, and played for the jury.

Charlotte Cummings testified that she knew the appellant and was with him on the evening of March 26. They went to Buxton's Drug Store and later, they drove to Weatherby's Seafood Restaurant. Appellant took her stocking and told her to sit in the car. He put the stocking over his head and left. When he returned, they went to her apartment where the appellant pulled out the money and counted it. Appellant stayed overnight at her apartment. She telephoned her friend, Mary Cook, who came over. All three then went to Mrs. Cook's home.

Mrs. Cook testified that Mrs. Cummings had called her on the morning of March 27; that she went to Mrs. Cummings' apartment, found the appellant there, and the three subsequently drove to her house; that the appellant was belligerent and threatened both of them and left. After Mr. Cook returned home, the two women told him what had happened. The police were called and arrested the appellant on March 28.

The pharmacist and clerk of Buxton's Drug Store testified that shortly before 8 p.m. on March 26, the appellant and Mrs. Cummings entered and left and then returned. The appellant held a woman's nylon stocking which he tried to pull over his head but after being confronted by the pharmacist, the appellant began to wipe his brow with the stocking. The pharmacist watched the appellant and his companion leave and took down the license number of the car. All of the above facts are uncontroverted as the only defense witness at the trial was called to demonstrate the effect of pulling a nylon stocking over the face. As the uncontroverted evidence indicated that the appellant was not armed but merely simulated a weapon by the position of his hand in his pocket, the court instructed the jury that as a matter of law, he was either not guilty or guilty of robbery in the second degree.

▇▇▇ The first contention on appeal is that the evidence was insufficient to support a finding that the taking was accomplished by force or fear and thus constituted a robbery. Appellant contends that there was no direct testimony by Mrs.

Frank that she was afraid and that there was insufficient evidence of force. Mrs. Frank testified that the robber had shouted at her not to try anything or she would get hurt and that she thought he had a gun. From these facts alone, the jury could reasonably infer that Mrs. Frank turned over her money because she was afraid (*People* v. *Gutkowsky,* 100 . Cal. App.2d 635 [224 P.2d 95]). ■ Section 211 of the Penal Code defines robbery as the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force *or* fear. It is not necessary that a robbery be accomplished by means of both force and fear (*People* v. *Borra,* 123 Cal.App. 482 [11 P.2d 403] ; *United States* v. *Baker,* 129 F.Supp. 684), as proof of either one is sufficient to sustain the conviction (*People* v. *Reade,* 197 Cal.App.2d 509 [17 Cal.Rptr. 328]). If the record demonstrates adequate evidence from which the jury might have inferred the existence of either force or fear, the appellate court must affirm (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778]). Thus, we need not discuss the appellant's next argument that force required to constitute robbery is synonymous with common law assault.

■ The next contention on appeal is that the evidence identifying the appellant as the robber was insufficient. Appellant contends that the identification evidence is so improbable as to be incredible and was the result of an unfair lineup. The record, however, indicates each of the eyewitnesses saw the robber at close range, observed his walk and heard his voice. Each of the eyewitnesses subsequently identified the appellant as the robber by his Scotch brogue, peculiar walk, clothing, and general appearance, even though the nylon stocking over his face had admittedly distorted his features. It is not necessary that witnesses called to identify the accused should have seen his face. Identification based on other peculiarities may be reasonably sure (*People* v. *Coley,* 61 Cal.App.2d 810, 814 [143 P.2d 755]). Mrs. Frank had viewed several other suspects before identifying the appellant.

■ Appellant further argues that the identification evidence is vitiated by the unfair use of the police lineup. Appellant concedes that the use of a lineup or showup is not based on any legal requirement (*People* v. *Branch,* 127 Cal. App.2d 438 [274 P.2d 31]), and that there is no obligation on law enforcement officers to use this method (*People* v.

*Knowles,* 35 Cal.2d 175 [217 P.2d 1]). He argues, however, that in the instant case, the lineup was not used fairly (*People* v. *Mora,* 139 Cal.App.2d 266, 273 [293 P.2d 522]) because four of the five men were well known law enforcement officials or public employees. Mrs. Frank recognized Deputy Sheriff Nichols and County Clerk Moore, and thus picked the appellant from the other three. Mrs. Harrell knew Moore also; Mrs. Norton knew Deputy District Attorney Quinn, so that each of these women identified the appellant from the other four. The People argue that the persons in the lineup were selected to fit the description of the appellant. We think the procedure was fairly used (*People* v. *Mora, supra*) to assist the jury in weighing the evidence relating to identification, but point out that care should be used in using too many well known persons in a lineup.

██ Appellant next contends that the trial court erred in permitting Mr. and Mrs. Frank and Gladys Harrell to testify that prior to the trial, each had identified one of the voices on a police tape recording as that of the appellant. Appellant contends that such evidence of an extrajudicial identification is hearsay and inadmissible without a prior showing that the witness is unable to identify the voice on the tape at the trial. The record indicates that an objection to the extrajudicial identification was made and overruled as to Mrs. Frank's testimony. An objection to Mr. Frank's testimony was made on the ground that the question called for a conclusion, and the same objection was made as to Mrs. Harrell. Subsequently, the tape was played for the jury and a police officer testified as to the identifications of the voice, and at the lineup.

As no timely and proper objections on the basis of hearsay were made (*People* v. *Alves,* 123 Cal.App.2d 735 [267 P.2d 858]; *People* v. *Scalamiero,* 143 Cal. 343 [76 P. 1098]), the matter was waived and cannot be raised for the first time on appeal (*People* v. *Dement,* 48 Cal.2d 600, 604 [311 P.2d 505]). Appellant, however, argues that even in the absence of objection, the testimony was erroneously admitted. In *People* v. *Slobodion,* 31 Cal.2d 555, 560 [191 P.2d 1], our Supreme Court held that the evidence by the prosecutrix that she had identified the defendant in a lineup was admissible to corroborate her story and to rebut the suggestion that her identification at the trial was the result of contrivance. In *People* v. *Gould,* 54 Cal.2d 621, 626 [7 Cal.Rptr. 273, 354

P.2d 865], the court held that evidence of an extrajudicial identification is admissible not only to corroborate an identification at the trial but as independent evidence of identity. The court answered appellant's precise argument as follows at page 626: "Unlike other testimony that cannot be corroborated by proof of prior consistent statements unless it is first impeached [citations], evidence of an extrajudicial identification is admitted regardless of whether the testimonial identification is impeached, because the earlier identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recognition in the witness' mind. [Citations.] The failure of the witness to repeat the extrajudicial identification in court does not destroy its probative value, for such failure may be explained by loss of memory or other circumstances. The extrajudicial identification tends to connect the defendant with the crime, and the principal danger of admitting hearsay evidence is not present since the witness is available at the trial for cross-examination."

We think the fact that in this case, the extrajudicial identification was aural rather than visual does not render the rules of the *Slobodion* and *Gould* cases inapplicable. Appellant's argument based on imperfect sound fidelity relates only to the question of the weight of the evidence rather than its admissibility.

The next argument is that the trial court erroneously admitted the testimony of Charlotte Cummings who, it is contended, was incompetent to testify pursuant to section 1880 of the Code of Civil Procedure. Appellant argues that the testimony that Mrs. Cummings was an alcoholic and had been hospitalized for alcoholism requires a finding of incompetence. Section 1880 provides that persons who are of unsound mind at the time of their production for examination cannot be witnesses. Appellant, however, has cited no case in this state or any other which classifies an alcoholic as a person of unsound mind for the purposes of such a statute. Section 1879 of the Code of Civil Procedure provides that all persons capable of perception and communication may be witnesses.

It is well settled that section 1880 does not impose an absolute disqualification even on insane persons (*People* v.

*McCaughan,* 49 Cal.2d 409, 419 [317 P.2d 974]), and a degraded character may be a competent witness although not credible (*In re Steinberg,* 138 F.Supp. 462; *Langer* v. *Langer,* 85 Cal.App.2d 806 [194 P.2d 81]; *People* v. *Cox,* 66 Cal.App. 287 [226 P. 14]).

The true rule is that the trier of facts and not a reviewing court has the task of balancing the scales to evaluate the evidence, and that competency depends on the ability of the witness to perceive, recollect and communicate with reference to the event in question. In the instant case, Mrs. Cummings testified that she had been drinking heavily on March 26, 27 and 28. She also testified that she was an alcoholic, had been hospitalized as such, and that she blacked out when she drank to excess. These matters, along with the inconsistencies in her testimony, were questions of weight for the jury. We note further that although appellant had notice of this alleged incompetency early in the course of direct examination, he did not take the witness on *voir dire* or object to her competency at any stage of the proceedings.

The final contention on appeal is that the prosecution was guilty of prejudicial misconduct. This contention is based on the prosecuting attorney's closing argument in which he declared: "This man is as guilty as sin . . ." Appellant contends that this was a personal belief or conviction voiced by the prosecutor and, therefore, constituted prejudicial error. It is well settled that such a statement is not prejudicial when based on a conclusion drawn from the evidence (*People* v. *Dick,* 200 Cal.App.2d 424 [19 Cal.Rptr. 317]; *People* v. *Romano,* 197 Cal.App.2d 622 [17 Cal.Rptr. 399]). Prejudice arises only if the prosecution's remarks are not based on evidence at the trial (*People* v. *Love,* 56 Cal.2d 720 [16 Cal.Rptr. 777, 17 Cal.Rptr. 481, 366 P.2d 33, 809]). Furthermore, misconduct depends on the particular facts of each case; that in the argument before the jury, any reasonable inference may be drawn from the evidence; and that it is a matter within the discretion of the trial court to determine whether counsel stays within the permissible range of discussion (*People* v. *Ketchel,* 59 Cal.2d 503, 541 [30 Cal.Rptr. 538, 381 P.2d 394]; *People* v. *Houghton,* 212 Cal.App.2d 864 [28 Cal.Rptr. 351]). We think that in the instant case, the trial court properly ruled that the remark did not constitute misconduct.

No error appearing in the record, the judgment is affirmed.

Shoemaker, J., and Agee, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 4, 1963.