[Crim. No. 4317. Third Dist. July 31, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. DAVID
JACKSON, Defendant and Appellant.

Archibald M. Mull, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Jack R. Winkler, Deputy Attorney General, for Plaintiff and Respondent.

BRAY, J.*—Defendant appeals from a judgment of conviction of the crime of first degree robbery.[1]

QUESTIONS PRESENTED

1. Correction by the court of its finding of degree prior to entry in minutes.

2. Sufficiency of evidence of first degree robbery.

RECORD

An information charged defendant with the crime of robbery, to which he pleaded not guilty. It also charged three priors, which defendant denied. By counsel and personally defendant waived jury trial. The court, after trial before it, found defendant guilty of first degree robbery and also found the allegations as to priors true. After holding that defendant was not an habitual criminal, the court sentenced defendant to state prison, the sentence to run concurrently with a prior sentence.

EVIDENCE

While Barton Jeffcoat was driving a cab in Sacramento, on his way to pick up a fare to which he had been dispatched, he was flagged down by defendant. Another man, later identified as one Watkins, was standing near defendant in the yard of the premises where defendant was. Defendant asked the cab driver to return in 20 minutes and offered him some money which was refused. Some half hour later, Jeffcoat returned. Defendant and Watkins got into the back seat of the cab and told the driver to go to Broadway so they could locate a car belonging to Watkins. The latter directed the driver to a certain corner, got out, went to a house, returned to the car and said, "Well, it's there." Defendant started to leave the cab and Jeffcoat asked him for some money. Defendant gave him $2.00 and got out of the cab. Watkins asked the driver if defendant paid him. The driver replied that defendant gave

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]Defendant appears herein by court-appointed counsel.

him $2.00. Defendant said, ''Well, if you are going to be that way about it, I'll take that back,'' and then took the $2.00 out of the driver's hand. Defendant and Watkins walked up the street and Watkins got into a car which stopped for him and left.

After Watkins left defendant returned to the cab, getting into the front seat. He asked Jeffcoat to follow Watkins but the driver did not know where he had gone. Defendant then told Jeffcoat that he had ''just gotten out of Folsom Prison,''[2] after having been there 11 years. He said he had a gun ''on him'' as long as Jeffcoat's leg, and he (defendant) ''should have killed the other guy'' because defendant had been ''robbed'' by him. Jeffcoat felt that defendant was indicating that he had the gun on his person. He did not display any weapon. He asked to be taken to ''Southside.'' As they neared the rest rooms at Southside Park, defendant said, ''This is good right here.'' The driver stopped the cab. Defendant asked the latter how much change he had. The driver started to reach for his pocket. Defendant said, ''I don't mean that, I mean that you have got in your shirt pocket.'' The driver took the money out of his shirt, counting it, and told defendant it was $9.00. Defendant said, ''Give it to me.'' Jeffcoat asked whether defendant was going to rob him. Defendant made no reply. Jeffcoat handed defendant the money. Defendant asked for the driver's name and address, saying, ''I might want to rob somebody or hold up a bank and I want the same driver all the time.'' Jeffcoat gave him a fictitious name and address. When Jeffcoat gave the money into defendant's left hand, defendant was drawing his right hand out from under his coat. There was nothing in that hand but Jeffcoat saw a bulge under defendant's coat. Defendant got out of the cab and left. Jeffcoat immediately reported the robbery. Jeffcoat gave defendant the money because he was afraid of him, thinking that defendant had a gun. Jeffcoat identified defendant the next day in a police station lineup.

Officer John Bibica testified that he took defendant to the police station the next day. After being advised of his constitutional rights, defendant admitted being in Jeffcoat's cab the previous day with Watkins but claimed that he and Watkins had both gotten out of the cab at a certain pool hall (a different location from that testified to by Jeffcoat). Defendant further said to Officer Bibica, ''If I was going to rob

---

[2]He had been released on parole from there 9 or 10 days theretofore.

somebody, I'd pick on somebody with more money than a cab driver.''

At the trial defendant admitted being in Jeffcoat's cab with Watkins but did not know where Watkins could be found. He did not know if the latter had a scar on his neck as testified to by Jeffcoat. He said that both he and Watkins had gotten out of the cab at the pool hall and that he did not go to Southside. He said he paid Jeffcoat $3.00. He stood waiting by a tree for a man for a while and then left. Defendant denied he had demanded return of the $2.00, that he said he had a gun as long as Jeffcoat's leg, or that he took any money from Jeffcoat.

Edward Taylor, a Sacramento police officer, testified to the description of the robber given by Jeffcoat on the day of the robbery, which did not refer to the unusual features, marks and scars which Jeffcoat testified the robber possessed and which Jeffcoat testified defendant had.

1. Change of Finding.

At the conclusion of the testimony, the court stated there was reasonable doubt as to whether defendant used a gun and the court was not satisfied he did, ''So, the Court must and does find the Defendant guilty of robbery of the second degree.''

''Thereupon, the prosecutor said, ''Your Honor may have forgotten the fact I think the People had shown the robbery was committed while the victim was in the process of transporting passengers for hire as a licensed taxi driver, your Honor, which would make it in the first degree.'' The court agreed that the prosecutor's point was well taken and said, ''The Defendant is guilty of robbery of the first degree and the Court so finds.''

Defendant contends that the court having stated that it found defendant guilty of second degree robbery could not then find him guilty of first degree robbery. The finding entered in the minutes was of guilt of robbery in the first degree.

Penal Code, section 211a, provides in pertinent part that ''the robbery of any person who is performing his duties as operator of any motor vehicle . . . used for the transportation of persons for hire, is robbery in the first degree.''

In *People* v. *Machen* (1935) 3 Cal.App.2d 499 [39 P.2d 893], the defendant was tried by the court, a jury trial having been waived. On September 26, 1934, he was adjudged guilty of attempted burglary as charged. On September 28 the court

made a minute entry finding the crime to be of the second degree and set October 10 as the time for pronouncing judgment. On that date the court found the crime to be attempted burglary of the first degree and sentenced the defendant accordingly. In holding that the superior court was without power to change its original order, the court stated that had the case been tried by a jury and had the jury found the crime to be of the second degree, ''it could not be maintained that after entry of such verdict the court or jury could thereafter make a new and different finding'' (p. 501), and that by analogy the same rule should apply when trial is by the court and the court ''has regularly made its order establishing the degree of the crime.'' (P. 502.) The *Machen* case differs from the case at bench in that in *Machen* a minute entry had been made, whereas here none had been. Here there was no change of a minute entry but merely a change in the oral statement of the court.

In *People* v. *McAllister* (1940) 15 Cal.2d 519 [102 P.2d 1072], at the morning session of the court sentence was imposed upon the defendant that he pay a certain fine. There was no provision for what would happen in the event the fine was not paid. In the afternoon the court called the defendant and his counsel back to the courtroom and further ordered imprisonment in event the fine was not paid as ordered. In holding that the court had the power to add the alternative, the reviewing court said: ''As the sentence pronounced by the court at its morning session had not been entered in the minutes of the court prior to the afternoon session, and as defendant had not been placed under any restraint by reason of the first sentence, the court at the time it pronounced the second sentence had jurisdiction and authority to amend or modify its previous sentence by including in the sentence the alternative provision in the event of nonpayment of the fine.'' (P. 524.)

In *People* v. *Thomas* (1959) 52 Cal.2d 521 [342 P.2d 889], at the morning session the court sentenced the defendant to county jail. As the clerk was about to prepare the minutes from his rough notes, he noticed that the court had not disposed of a prior. The defendant and counsel were called back to court that afternoon, and the court rescinded the sentence of the morning and sentenced defendant to prison. The reviewing court held that the trial court had jurisdiction to change the sentence.

In *People* v. *Hales* (1966) 244 Cal.App.2d 507 [53 Cal.

Rptr. 161], the court stated, at page 511: ''The trial court has inherent power to modify or set aside its pronounced judgment if it has not been entered into the minutes of the court and if execution of its terms has not commenced.''

In the instant case the trial court had power to make the change in the degree of the crime as no entry had yet been made in the minutes nor had defendant been placed under restraint because of the finding.

2. Sufficiency of Evidence.

Defendant contends that the evidence is insufficient to justify the conviction in two respects: (a) the identification of defendant was insufficient, and (b) the evidence fails to show that a robbery occurred.

(a) Identification.

 Jeffcoat testified to seeing a scar on defendant's chest as the latter's shirt was open. He stated that he mentioned the scar to the police officer. The officer said that he did not. Defendant did have a scar as described by Jeffcoat. Jeffcoat saw a chain which defendant was wearing but did not see the medallion on it. He did not observe that defendant's right eye was missing. There was some difficulty in matching the clothes Jeffcoat said defendant was wearing in the robbery with those he was wearing at the lineup. However, these were matters for the judge to consider in determining the weight to be given Jeffcoat's testimony; they could not as a matter of law overcome Jeffcoat's positive identification of defendant as the robber made at the lineup and at the trial.

 ''The testimony of a robbery victim, if believed by the trier of facts, is sufficient of itself to warrant a conviction, and no corroborative evidence is required.'' (*In re Corey* (1964) 230 Cal.App.2d 813, 826 [41 Cal.Rptr. 379].) It must be remembered also that defendant testified that he was in Jeffcoat's cab on the day of the robbery with Watkins, although he denied robbing the driver and being at the precise place where Jeffcoat said the robbery occurred.

(b) There was a robbery.

 Defendant contends that the evidence showed ''no threats, no weapon, no intimidation, no forceful taking, no use of fear''; he claims that, at the most, all that was proved was a theft from Jeffcoat's person.

Jeffcoat testified that defendant told him that he had ''just gotten out of Folsom Prison'' and that he had a gun ''on him'' as long as the victim's leg; from the manner of his speaking, Jeffcoat thought defendant had the gun on his

person. When defendant demanded the $9.00, defendant had one hand under his coat where Jeffcoat saw a bulge. The latter testified that he gave up the money because he thought defendant had a gun and because he was afraid of defendant.

In *People* v. *James* (1963) 218 Cal.App.2d 166 [32 Cal. Rptr. 283], the robber told the victim, Mrs. Frank, that she would not get hurt if she did what he told her. He had his hand in his pocket and said, "This is a stickup." Although she saw no gun, she thought from his actions that he had one. The court stated: "From these facts alone, the jury could reasonably infer that Mrs. Frank turned over her money because she was afraid. [Citation.]" (P. 170.)

In the case at bench there is ample evidence to support the court's implied finding that Jeffcoat's surrender of his money was because defendant's actions had put Jeffcoat reasonably in fear of him. (See *People* v. *James, supra,* p. 170.)

Defendant at oral argument seemed to contend that there was no evidence that Jeffcoat was driving a motor vehicle used for the transportation of persons for hire. There was ample evidence of this fact. Barton Jeffcoat had been employed for nearly four years as a cab driver for Capital Transportation Company. He was on his way to pick up a fare to which he had been dispatched when he was flagged down by defendant. After transporting three other "fares" in other parts of town, he returned to defendant. His vehicle was called a "cab" by all at the trial. Jeffcoat asked for money for the trip. Defendant at no time at the trial raised any question concerning this matter.

The judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.