Filed 6/26/13  P. v. Gonzalez CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE, | B238792 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA065764) |
| v. | |
| ERICK GONZALEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael Jesic, Judge.  Affirmed in part and reversed in part with directions.

Allison H. Ting, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II, and Sonya Roth, Deputy Attorneys General, for Plaintiff and Respondent.

Erick Gonzalez appeals from the judgment entered following his convictions by jury on two counts of kidnapping during the commission of carjacking (Pen. Code, 209.5, subd. (a); counts 1 & 9), two counts of carjacking (Pen. Code, § 215, subd. (a); counts 2 & 13), two counts of first degree robbery (Pen. Code, §§ 211, 212.5, subd. (a); counts 3 & 12), count 8 – kidnapping to commit robbery (Pen. Code, § 209, subd. (b)(1)), and count 10 – false imprisonment by violence (Pen. Code, § 236) armed with a firearm (Pen. Code, § 12022, subd. (a)(1)) with findings as to counts 8, 9, 12, and 13 that appellant was armed with a firearm (Pen. Code, § 12022, subd. (a)(1)) and personally used a firearm (Pen. Code, § 12022.53, subd. (b)) and with an admission he suffered a prior felony conviction (Pen. Code, § 667, subd. (d)) and a prior serious felony conviction (Pen. Code, § 667, subd. (a)).  The court sentenced appellant to prison for 20 years, plus two consecutive sentences of life with the possibility of parole.  We affirm the judgment, except we reverse appellant's convictions on counts 2 and 13, and dismiss those two counts.

## FACTUAL SUMMARY

1. *The Offenses Against Hector Castro (Counts 8 –13).*

   a. *People's Evidence.*

   Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 (*Ochoa*)), the evidence established that in July 2010, Hector Castro was employed as an unlicensed taxi driver.  A "base" would call Castro to notify him where to pick up a person, and Castro testified "we have set prices."  In 2010, he used his car, a 2002 Infinity, as the taxi.  It did not have the equipment of a normal cab.

   On the evening of July 23, 2010, Castro was working as a "bandit taxi."  Castro received a call from the base and went to Woodman and Nordhoff to pick up a fare.  Appellant entered the cab.  At appellant's request, Castro eventually took him to a nightclub near Hollywood and Highland.

   Castro asked for Castro's money.  Appellant indicated he would call his friend because his friend was going to pay the money.  Appellant made a call and, shortly

2

thereafter, codefendant Iker Villanueva[1] exited the nightclub and approached. Villanueva told Castro that Villanueva was not going to pay. Castro again asked appellant for payment.

Villanueva told appellant to pull out "the weapon" and point it at Castro. Appellant complied. Villanueva sat in the back seat. Appellant gave the gun to Villanueva, who put the gun against Castro's ribs. Villanueva later told Castro to drive and Castro complied. Appellant and Villanueva subsequently committed the offenses alleged in counts 8 through 13.

b. *Defense Evidence.*

In defense, appellant, who had been convicted of residential burglary, testified that at the end of July 2010, he called a taxi service to have a taxi take him to a nightclub. A friend told appellant that Villanueva would pay for the taxi. A car arrived and appellant asked its driver, "Are you the taxi?" The driver said yes. Appellant entered the car, told the driver that appellant had no money, and told the driver that appellant's cousin (Villanueva) would pay the driver once they arrived at the nightclub. The driver took appellant to the nightclub. Villanueva later exited the club. Appellant exited the cab, told Villanueva that "he's a taxicab," and told Villanueva "it was about [$]25 to $35." Villanueva indicated Villanueva would pay for it. Appellant joined his friends at the club and did not see Villanueva again that night.

2. *The Offenses Against Ramon Barajas (Counts 1 – 3).*

a. *People's Evidence.*

Ramon Barajas testified that on August 4, 2010, he was employed as an unlicensed taxi driver. A person would call the main number and request a taxi. A base would contact Barajas by radio to notify him where to pick up the person. Barajas would tell a prospective customer the approximate amount Barajas wanted the person to pay.

---

[1]      Villanueva is not a party to this appeal.

3

On the night of August 4, 2010, Barajas went to pick up a fare on Ethel and Barham. Barajas was a "bandit taxi driver." He was driving his 2005 Sebring. When Barajas arrived at the location, Villanueva entered the car and sat in the passenger seat. Villanueva asked Barajas to take him to an In-N-Out Burger on Lankershim. After Barajas drove there and entered the parking lot, appellant entered the car and sat in its backseat. Villanueva told Barajas to drive back to Ethel and Barham. After Barajas began to comply, appellant and Villanueva committed the offenses alleged in counts 1 through 3.

      b. *Defense Evidence.*

In defense, appellant testified that one day in the beginning of August 2010, he asked Villanueva for a ride home. Villanueva agreed to give appellant a ride but told him to wait at the In-And-Out Burger. Appellant did so and Villanueva eventually arrived. Appellant entered the car. Villanueva asked the driver to take them to the location where the driver originally had picked up Villanueva. En route, Villanueva asked the driver if the driver could drive Villanueva and appellant around for $100. Appellant then realized the car was a taxicab. The driver rejected Villanueva's request. Villanueva robbed the driver. Appellant did not believe what was happening. The driver later stopped and fled, and Villanueva began driving. Appellant eventually jumped from the moving car.

## ISSUES

Appellant claims (1) there is insufficient evidence the robberies (counts 3 & 12) were of the first degree, (2) the trial court erroneously failed to instruct sua sponte on the definition of a "taxicab" for purposes of first degree robbery (counts 3 & 12), and (3) counts 2 and 13 must be dismissed because carjacking is a lesser included offense of kidnapping during the commission of carjacking.

4

*DISCUSSION*

1. *There Was Sufficient Evidence the Robberies Were of the First Degree.*

Appellant claims in essence there is insufficient evidence the robberies (counts 3 & 12) were of the first degree. We disagree. Penal Code section 212.5, subdivision (a) specifies the kinds of robbery that are of the first degree. The parties concede the pertinent portion states "(a) Every robbery of any person who is performing his or her duties as an operator of any . . . taxicab, . . . or other vehicle, . . . used for the transportation of persons for hire, . . . is robbery of the first degree."[2]

Appellant concedes he robbed Castro and Barajas. The remaining issue is whether each was "performing his or her duties as an operator of any . . . taxicab, . . . or other vehicle, . . . used for the transportation of persons for hire, . . ." within the meaning of Penal Code section 212.5, subdivision (a). Our power in determining this issue begins and ends with the determination whether there is substantial evidence, contradicted or uncontradicted, to support the judgment. (Cf. *People v. Hernandez* (1990) 219 Cal.App.3d 1177, 1181-1182 (*Hernandez*).)

There was substantial evidence from the People's case-in-chief as follows. Castro and Barajas were taxi drivers. Each used his own car as the taxi. On the dates of the robberies, each victim picked up appellant with the understanding the victim, as a taxi driver, would be paid a fare for transporting appellant in a taxi. Appellant committed the offenses while each victim was driving or otherwise performing his duty as an operator of a "taxicab, . . . or other vehicle."

We note the phrase "used for the transportation of persons for hire" *describes the "taxicab, . . . or other vehicle."* Penal Code section 212.5, subdivision (a) does not define the phrase "for hire." In common parlance, the phrase "for hire" means "available for use or service in return for payment."[3] As mentioned, each victim picked up

---

[2]    In Penal Code section 212.5, subdivision (a), the word "and" immediately precedes the word "used."

[3]    Merriam-Webster's Collegiate Dictionary (10th ed. 1995) page 549.

5

appellant with the understanding the victim would be paid, as a taxi driver, a fare for transporting appellant in a taxi. Each "taxicab, . . . or other vehicle" in this case was thus "available for use or service in return for payment," i.e., each such "taxicab, . . . or other vehicle" was "for hire" within the meaning section 212.5, subdivision (a). We conclude there is sufficient evidence to convince a rational trier of fact, beyond a reasonable doubt, that appellant committed first degree robbery. (Cf. *Ochoa*, *supra*, 6 Cal.4th at p. 1206; *Hernandez, supra,* 219 Cal.App.3d at pp. 1181-1182; *People v. Jackson* (1967) 253 Cal.App.2d 68, 74; Pen. Code, § 212.5, subd. (a).)

Appellant argues the contrary, although his argument is not entirely clear. The *heading* of his opening brief essentially asserts appellant committed only second degree robbery as to counts 3 and 12 because neither victim drove "a 'taxicab' within the meaning of Vehicle Code section 27908."[4] (Some capitalization omitted.) His *argument*

---

[4] Vehicle Code section 27908 states, "(a) In every taxicab operated in this state there shall be a sign of heavy material, not smaller than 6 inches by 4 inches, or such other size as the agency regulating the operation of the taxicab provides for other notices or signs required to be in every taxicab, securely attached and clearly displayed in view of the passenger at all times, providing in letters as large as the size of the sign will reasonably allow, all of the following information: [¶] (1) The name, address, and telephone number of the agency regulating the operation of the taxicab. [¶] (2) The name, address, and telephone number of the firm licensed or controlled by the agency regulating the operation of the taxicab. [¶] (b) In the event more than one local regulatory agency has jurisdiction over the operation of the taxicab, the notice required by paragraph (1) of subdivision (a) shall provide the name, address, and telephone number of the agency having jurisdiction in the area where the taxicab operator conducts its greatest volume of business; or, if this cannot readily be ascertained, the agency having jurisdiction in the area where the taxicab operator maintains its offices or primary place of business, provided that the operator conducts a substantial volume of business in such area; or, if neither of the foregoing provisions apply, any agency having jurisdiction of an area where the taxicab operator conducts a substantial volume of business. [¶] (c) As used in this section, 'taxicab' means a passenger vehicle designed for carrying not more than eight persons, excluding the driver, and used to carry passengers for hire. 'Taxicab' shall not include a charter-party carrier of passengers within the meaning of the Passenger Charter-party Carriers' Act, Chapter 8 (commencing with Section 5351) of Division 2 of the Public Utilities Code."

quotes that entire section, but fails to explain clearly how the entirety, or any explicit portion, of the section supports his insufficiency claim.

To the extent appellant argues the definition of "taxicab" in Vehicle Code section 27908, subdivision (c) applies to the word "taxicab" in Penal Code section 212.5, subdivision (a), first, the latter subdivision does not expressly incorporate the definition of "taxicab" found in Vehicle Code section 27908, subdivision (c).  Second, Vehicle Code section 27908, subdivision (c) by its terms states what "taxicab" means "[a]s used in this section," i.e., in Vehicle Code section 27908, not Penal Code section 212.5, subdivision (a).

Third, even if Vehicle Code section 27908, subdivision (c) defined the word "taxicab" for purposes of Penal Code section 212.5, subdivision (a), we believe the facts in this case and the analysis supporting our conclusion each victim was "performing his or her duties as an operator of any . . . taxicab, . . . or other vehicle, . . . used for the transportation of persons for hire, . . ." within the meaning of Penal Code section 212.5, subdivision (a) supports a conclusion each of the victim's vehicles was a "passenger vehicle designed for carrying not more than eight persons, excluding the driver, and used to carry passengers for hire" within the meaning of Vehicle Code section 27908, subdivision (c).

Appellant also argues in his opening brief the robberies were only second degree robberies because the victims "were not driving *licensed or regulated* taxicabs and were not *licensed or regulated* taxicab drivers" (italics added), the victims had "no . . . *legal* status" as "transit operators" (italics added), and the victims "were not operating a licensed, regulated, and *marked* taxicab."  (Italics added.)

In his reply brief, appellant, for the first time, explicitly argues (1) when Penal Code section 212.5, subdivision (a) uses the phrase "used for the transportation of persons for hire," the phrase "for hire" means "*legally and legitimately* for hire" (italics added) and (2) the robberies were of the first degree only if the victims were engaged in "the *lawful transportation* of persons for hire."  (Italics added.)

The gravamen of appellant's argument appears to be that a robbery which is otherwise of the first degree because it is a "robbery of any person who is performing his or her duties as an operator of any . . . taxicab, . . . or other vehicle, . . . used for the transportation of persons for hire" within the meaning of Penal Code section 212.5, subdivision (a) is nonetheless not first degree robbery if the victims were "bandit taxi drivers," i.e., unlicensed taxi drivers who were driving unlicensed, unmarked taxis. For the reasons discussed below, we reject appellant's arguments.

First, Penal Code section 212.5, subdivision (a) states first degree robbery includes the "robbery of *any* person who is performing his or her duties as an operator of *any* . . . taxicab, . . . or other *vehicle*, . . . used for the transportation of persons for hire, . . ." (Italics added.) There is no ambiguity in this language, we presume the Legislature meant what it said, and the plain meaning of the subdivision governs. (See *People v. Superior Court* (*Ghilotti*) (2002) 27 Cal.4th 888, 905.) Section 212.5, subdivision (a) does not contain the language, or require satisfaction, of any of the previously italicized formulations in appellant's opening brief or reply brief.

Second, in *People v. McDade* (1991) 230 Cal.App.3d 118, the court, discussing Penal Code section 212.5, subdivision (a), stated, " 'Although intending to deter both theft and personal harm, robbery legislation emphasizes personal protection. Implementing its intent to protect robbery victims, the Legislature has developed a statutory scheme increasing sentences for increased victim vulnerability.' " (*McDade,* at p. 127.) Taxi drivers, legitimate or "bandit," drive for a living; therefore, they are more vulnerable than members of the public generally.

Third, we note that, according to Penal Code section 212.5, subdivision (a), first degree robbery includes "every robbery of any *passenger* which is perpetrated on any of these vehicles." (Italics added.) If appellant's argument were correct that subdivision (a) applied only when a taxicab was licensed and properly marked, it would seem to follow that the robbery of a *passenger* in an unlicensed or unmarked taxicab would not be first degree robbery if the driver was unlicensed or the sign required by Vehicle Code section

8

27908, subdivision (a) was slightly "smaller than 6 inches by 4 inches" within the meaning of the latter subdivision. This would be true even though the passenger had no control over these matters. We believe the Legislature's intent in enacting section 212.5, subdivision (a), to impose greater punishment for increased victim vulnerability, would be disserved by appellant's construction of that subdivision.

Fourth, to the extent appellant analogizes to contract law, appellant's obligations arose from the Legislature's enactment of Penal Code section 212.5, subdivision (a), not from any contract between appellant and the victims. Fifth, appellant's argument that subdivision (a) applies only when the robbery victims are engaged in "the *lawful transportation* of persons for hire" is vague and argues too much. Based on that argument, it would appear the robbery of the victims in this case would have been only of the second degree if they had failed to stop for a stop sign. Finally, we note the Legislature knows how to express an intent to exclude the actions of unlicensed persons from the benefits of laws when the Legislature wants to do so.[5] Appellant's claim fails.

2. *The Trial Court Had No Duty to Instruct Sua Sponte on the Definition of a Taxicab.*

Appellant claims the trial court erroneously failed to instruct sua sponte on the definition of a taxicab. He argues the Legislature, by imposing harsher punishment on "those who rob taxicab drivers (and passengers) than on those who rob other people . . . must have used the word 'taxicab' in the technical, legal sense set forth in Vehicle Code section 27908." We conclude otherwise.

First, a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language. (Cf. *People v. Palmer* (2005) 133 Cal.App.4th 1141, 1156.) CALCRIM No. 1602, the instruction on first degree

---

[5] See, e.g., Business and Professions Code section 7031, subdivision (a), precluding actions by unlicensed contractors to recover compensation, and subdivision (b), permitting actions by persons against unlicensed contractors for recovery of compensation paid.

9

robbery that the court gave to the jury, was essentially based on the statutory language.[6] The instruction was correct in law and responsive to the evidence. Appellant did not request clarifying or amplifying language concerning the instruction. Appellant waived his instructional issue. (Cf. *Palmer*, at p. 1156.)

Second, as to the merits, "The language of a statute defining a crime . . . is generally an appropriate and desirable basis for an instruction, and is ordinarily sufficient when the defendant fails to request amplification. If the jury would have no difficulty in understanding the statute without guidance, the court need do no more than instruct in statutory language. [Citation.]." (*People v. Poggi* (1988) 45 Cal.3d 306, 327.) Moreover, " 'a trial court must instruct on general principles of law that are . . . necessary to the jury's understanding of the case.' [Citations.] That obligation comes into play when a statutory term 'does not have a plain, unambiguous meaning,' has a 'particular and restricted meaning' [citation], or has a technical meaning peculiar to the law or an area of law [citation]." (*People v. Roberge* (2003) 29 Cal.4th 979, 988.)

Appellant, citing Vehicle Code section 27908, subdivision (a) argues the trial court was required to instruct the jury sua sponte that a "taxicab" had to "display a sign indicating its licensing and regulatory authority." We reject that argument for the reasons previously discussed in our rejection of appellant's sufficiency claim. Moreover, CALCRIM No. 1602 was essentially based on the statutory language that set forth the requirement for first degree robbery in this case. Nothing more was required. No instructional error occurred.

---

[6]     CALCRIM No. 1602 stated, "Robbery is divided into two degrees. If you conclude that the defendant committed a robbery, you must then decide the degree. [¶] To prove that the defendant is guilty of first degree robbery, the People must prove that: [¶]  The robbery was committed while the person robbed was performing his duties as the driver of or was a passenger on a taxi. [¶]  All other robberies are of the second degree. [¶]  The People have the burden of proving beyond a reasonable doubt that the robbery was first degree rather than a lesser crime. If the People have not met this burden, you must find the defendant not guilty of first degree robbery."

3.  *Appellant's Convictions on Counts 2 and 13 Must Be Dismissed.*

Respondent concedes carjacking is a lesser included offense of kidnapping during the commission of carjacking; therefore, appellant's carjacking offenses (counts 2 & 13) were lesser included offenses of his offenses of kidnapping during the commission of carjacking (counts 1 and 9, respectively) and counts 2 and 13 must be stricken.  We accept the concession.  (*People v. Ortiz* (2002) 101 Cal.App.4th 410, 415; *People v. Contreras* (1997) 55 Cal.App.4th 760, 762, 765; see *People v. Medina* (2007) 41 Cal.4th 685, 690.)  We will reverse appellant's convictions on counts 2 and 13 (*People v. Pearson* (1986) 42 Cal.3d 351, 355) and dismiss those two counts (Pen. Code, § 1262).  (Cf. *Ortiz, supra*, 101 Cal.App.4th at pp. 415, 417; *Contreras, supra*, 55 Cal.App.4th at p. 765.)

### *DISPOSITION*

The judgment is affirmed, except that appellant's two convictions for carjacking (Pen. Code, § 215, subd. (a); counts 2 & 13) are reversed and counts 2 and 13 are dismissed.  The trial court is directed to forward to the Department of Corrections an amended abstract of judgment.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

CROSKEY, Acting P. J.                    ALDRICH, J.

11