Filed 1/14/14  P. v. Kuk CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B240585 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. KA091650) |
| TREVOR B. KUK, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. George Genesta, Judge.  Affirmed.

Robert Bryazman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven E. Mercer and Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Trevor B. Kuk appeals from his convictions, following a jury trial, of second degree burglary, second degree robbery, assault with an assault weapon upon peace officers, shooting at an occupied aircraft, possession of an assault weapon, and felony evading.[1]  He contends:  (1) there was insufficient evidence to support the convictions for assault on a peace officer with an assault weapon (counts 8 and 9) and shooting at an occupied aircraft (count 10); (2) the failure to give a unanimity instruction as to the two robbery counts was prejudicial error; and (3) failure to instruct on theft as a lesser included offense of robbery was prejudicial error.  We affirm.

**INTRODUCTION**

The Burro Canyon Shooting Park is a shooting range located off Highway 39 in the San Gabriel Mountains.  In the park office, merchandise for sale is displayed in glass cases.  In August 2012, defendant and Maria Martinez had been in a romantic relationship for about six months.  During that time, they had progressed from occasional

---

[1]    All undesignated statutory references are to the Penal Code.  Defendant was charged by amended information with: attempted murder of a peace officer (§§ 664, 187, subd. (a)) (counts 1 [Michael Luther] and 2 [Karen Dearborn]); second degree commercial burglary (§ 459) (count 3); assault with an assault weapon (§ 245, subd. (a)(3)) (counts 4 [Matthew Skolaski] and 6 [Ines Fuentes]); felony evading an officer (Veh. Code, § 2800.2, subd. (a)) (count 5); second degree robbery (§ 211) (counts 7 [Mathew Skolaski] and 11 [Thomas Serrato]); assault on a peace officer with an assault weapon (§ 245, subd. (d)(3)) (counts 8 [Michael Luther] and 9 [Karen Dearborn]); shooting at an occupied aircraft (§ 246) (count 10); and possession of an assault weapon (§ 12280, subd. (b)) (count 12). Various gun use enhancements were also alleged (§ 12022.5, subds. (a), (b) and (d); § 12022.53, subd. (b)).  A jury found defendant guilty of:

- Second degree burglary (count 3);
- Second degree robbery of Serrato (count 11);
- Felony evading an officer (count 5);
- Assault on a peace officer with an assault weapon (counts 8 and 9);
- Shooting at an occupied aircraft (count 10); and
- Possession of an assault weapon (count 12).

It also found true all of the enhancements relating to those counts.  The jury found defendant not guilty of the remaining counts.  Defendant was sentenced to 45 years, 8 months in prison.  He timely appealed.

methamphetamine use to using three or four times a day. Defendant's hobby was shooting guns. In mid-July 2012, Martinez acquired a gun for defendant because he could not purchase one in his own name; defendant modified the gun so that it would shoot more than one bullet at a time. Armed with this gun, defendant broke into the Burro Canyon Shooting Park in the early morning hours of August 16, 2012, while Martinez acted as his lookout.[2] The burglary was interrupted by a park employee. Defendant led sheriff's deputies on a high speed chase during which he shot at a Sheriff's Department helicopter. A television news crew videotaped the pursuit. In the following section, we detail only those facts relevant to the issues on appeal.

**FACTS**

A.    *Count 3 (Second Degree Burglary of Burro Canyon Shooting Park), Count 7 (Second Degree Robbery of Skolaski), Count 11 (Second Degree Robbery of Serrato)*

Viewed in accordance with the usual rules on appeal (*People v. Zamudio* (2008) 43 Cal.4th 327, 357-358), the evidence established that defendant and Martinez used methamphetamine and ecstasy while together at defendant's home the night of August 15, 2012. At about 2:00 or 3:00 a.m. on August 16, while they were driving around in defendant's white Mazda pickup truck and smoking methamphetamine, defendant told Martinez his plan to steal things from a shooting range. When defendant stopped to remove the license plate from the truck, Martinez noticed that the gun she had bought for him was behind the driver's seat. Defendant drove to the Burro Canyon Shooting Park, where he cut off the lock on the entrance gate, then drove up the hill and parked next to a shed. Defendant cut off the lock on the shed and went in. Defendant next moved the truck closer to the shooting range office. Martinez waited in the truck while defendant, wearing a mask, walked up the ramp to the office. Martinez heard two

---

[2]    Martinez was jointly charged with defendant on all but the attempted murder counts. She pled guilty in exchange for dismissal of both assault on a peace officer counts and a six-year prison term.

3

gun shots, but did not hear any breaking glass. Defendant entered the shooting park office. A little while later, Martinez went up the ramp to urge defendant to leave. Defendant told Martinez to put on a mask and keep watch. He handed Martinez two cases he took from the office and instructed her to put them in the truck. Martinez put the cases in the truck and took a second mask out of a duffel bag defendant had packed while at his apartment; she held the mask to her face while she waited for defendant. Defendant handed Martinez some knives and told her to put them in an empty blue bin he had brought with them. Martinez was holding the bin of knives when a man (Serrato, the robbery victim named in count 11) pulled up in a white truck. Martinez yelled to defendant that someone was coming, then dropped the bin of knives and ran to defendant's Mazda. Defendant ran out of the store holding his gun, got into the Mazda and drove away. At the bottom of the hill, Martinez saw another man (Skolaski, the assault victim named in count 4 and robbery victim named in count 7) parked next to the gate in another white truck. Defendant bumped the gate open with the front of his truck and drove down the mountain. Skolaski followed them until defendant shot at him through the truck's back window.

Serrato testified that at about 5:00 a.m. on August 16, when he arrived at the park, the front gate was locked. Serrato was on the gun range picking up shell casings when he heard gunshots coming from the office area at about 6:00 a.m. Aware that no one should have been in the office at that hour, Serrato drove over to investigate. Upon arriving, he saw that the glass doors leading into the office were shattered. A white Mazda truck with no license plate was parked nearby and a woman holding a mask to her face was standing near the handicap ramp leading to the office. After the woman yelled, "Somebody's here, somebody's here," a masked man holding a Tec-9 pistol down by his side ran out of the office. Frightened by the sight of the gun, Serrato put his truck in reverse and backed up as far as possible while the man got into the driver seat and the woman got into the passenger seat of the Mazda and drove away. Once the Mazda was out of sight, Serrato called 911. Inside the shooting range office, he saw that the glass display cases had been broken and various items, including scopes, pepper spray and knives, were missing.

4

Serrato also discovered that a shed in which clay pigeons were stored had been broken into. Serrato told the responding officers what was missing and that he saw a masked man holding a pistol. Later that day, Serrato went to the San Dimas Sheriff's Station where he identified some of the stolen merchandise. Defendant was convicted in count 11 with the second degree robbery of Serrato.

When a second security guard, Skolaski, arrived at the park at about 6:00 or 6:30 a.m., the front gate was closed, but the lock had been cut off and was on the side of the road. Skolaski pulled inside the gate, closed it behind him, and parked to wait for Serrato. Skolaski saw a white Mazda pickup driving toward him at high speed. Skolaski could see a man and woman inside, both wearing black plastic masks. After the truck barreled through the closed gates, Skolaski followed it until the truck's back slider window opened and he heard four or five gunshots. Skolaski did not see a gun or any muzzle flashes, but believed the female passenger was shooting at him. Skolaski returned to the shooting range office to check on Serrato's welfare. Skolaski noticed a blue bin containing pocket knives underneath the deck in front of the office. The bin did not belong to the park but he recognized the contents as park merchandise. Later that day, Skolaski went with Serrato to the Sheriff's station and identified some of the stolen merchandise. Skolaski was the alleged victim in count 7 (second degree robbery) and count 4 (assault with an assault weapon). The jury found defendant not guilty on both counts.

B.   *Count 8 (Assault With An Assault Weapon On Peace Officer Michael Luther), Count 9 (Assault With An Assault Weapon On Peace Officer Karen Dearborn), Count 10 (Shooting At An Occupied Aircraft)*

Afraid defendant's erratic driving during the police pursuit was going to result in an accident, Martinez testified that she was focusing on the road ahead when she heard two gunshots. Turning toward defendant, Martinez saw him shoot two times out the driver side window into the air, where the helicopter was hovering above them.

5

Karen Dearborn testified that she was the co-pilot and Michael Luther was the pilot of the Sheriff's Department helicopter that assisted other officers in their pursuit of defendant and Martinez that morning. After the pursuing officers lost sight of the Mazda, a helicopter news crew that had been following the pursuit directed Dearborn and Luther to a gas station where the Mazda was parked. When the Mazda pulled out of the gas station, Luther followed it while Dearborn kept other law enforcement vehicles informed of the Mazda's location until the pursuit ended on the eastbound 10 Freeway, at the base of Kellogg Hill. By that time, 10 or 15 law enforcement vehicles were involved in the pursuit. During the pursuit, the Sheriff's Department helicopter maintained a height of between 400 and 500 feet, but after they were informed that they were being shot at, they backed off a little. Dearborn did not see defendant display a firearm or see muzzle flashes coming from the Mazda; no bullets hit the helicopter. A video of the pursuit taken by a news helicopter (People's Exhibit No. 17) was played for the jury. From the video, Dearborn identified the Sheriff's Department helicopter she and Luther were piloting. Photographs of the distinctively marked helicopter were introduced into evidence. (People's Exhibit Nos. 34 and 35.)

In a post-arrest interview, Martinez told Detective Allen Rich that defendant shot at the Sheriff's Department helicopter that had been following them. Rich viewed the news helicopter's video of the pursuit (People's Exhibit No. 17). When played in slow motion, puffs of smoke can be seen coming out of the driver side and rear windows of the Mazda. Rich created People's Exhibit No. 33, a slow-motion version of the segment in which the puffs of smoke are visible. Rich testified that the puffs of smoke were produced by gunshots and based on where the puffs were coming out of the car, he deduced that all shots were fired from either the Mazda's driver side window or the rear window. From the puffs of smoke, Rich could identify the direction shots were fired, including some that were fired up at the helicopters.

6

## DISCUSSION

A.   *Substantial Evidence Supported the Convictions on Counts 8 (Assault With An Assault Weapon on Peace Officer Michael Luther), 9 (Assault With An Assault Weapon on Peace Officer Karen Dearborn) and 10 (Shooting At An Occupied Aircraft)*

Defendant contends the convictions on the aircraft shooting counts (8, 9 and 10) were not supported by substantial evidence.  He argues that the only evidence defendant fired at the Sheriff's Department helicopter occupied by pilot Luther and co-pilot Deardon, was Martinez's uncorroborated testimony, which was insufficient as a matter of law because she was an accomplice.  We reject this argument.

The standard of review for a challenge to the sufficiency of the evidence is well settled.  We examine the entire record to determine whether there is reasonable, credible evidence that is of solid value from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.  (*People v. Virgil* (2011) 51 Cal.4th 1210, 1263.)  In so doing, we view the evidence in the light most favorable to the prosecution and presume in support of the judgment every fact the trier of fact could reasonably deduce from the evidence.  (*Ibid*.)  The same standard applies whether direct or circumstantial evidence is involved.  "Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt.  [Citation.]  ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' "  [Citation.]'  [Citation.]"  (*Ibid*.)

Generally, the uncorroborated testimony of a single witness is sufficient to support a conviction unless the testimony is physically impossible or inherently improbable.  (*People v. Canizalez* (2011) 197 Cal.App.4th 832, 845, citing *People v. Scott* (1978) 21 Cal.3d 284, 296.)  But the testimony of an accomplice is *not* sufficient to support conviction unless the accomplice's testimony is "corroborated by such other evidence as

shall tend to connect the defendant with the commission of the offense . . . ." (§ 1111.)
" ' "The corroborating evidence may be circumstantial or slight and entitled to little consideration when standing alone, and it must tend to implicate the defendant by relating to an act that is an element of the crime. The corroborating evidence need not by itself establish every element of the crime, but it must, without aid from the accomplice's testimony, tend to connect the defendant with the crime." ' [Citation.] 'The evidence is "sufficient if it tends to connect the defendant with the crime in such a way as to satisfy the jury that the accomplice is telling the truth." ' [Citation.]" (*People v. Williams* (2013) 56 Cal.4th 630, 679.) In *Williams*, three accomplices testified against the defendant who was charged with robbery and murder arising out of a failed drug deal. Our Supreme Court found the accomplice's testimony that the defendant set up the drug deal with the victim was sufficiently corroborated by telephone records showing calls between the defendant's home and the victim's work. The accomplice's testimony was further corroborated by other witnesses who saw the defendant leaving the house where the robbery occurred. The victims' wallets were found in a kitchen cabinet at the crime scene, corroborating the accomplice's testimony that the wallets were taken from the victims before they were killed. (*Id*. at p. 679.)

Here, it is undisputed that Martinez was defendant's accomplice. Her testimony that defendant shot at the Sheriff's Department helicopter while fleeing – the factual basis of counts 8, 9 and 10 – was corroborated by the slow speed video of the pursuit (People's Exhibit No. 33) in which puffs of smoke can be seen coming out of the driver's side window of the Mazda. Detective Rich testified that the puffs of smoke were from gunshots being fired out the driver's side and rear windows of the Mazda. It was undisputed that defendant was driving the Mazda during the entire pursuit. Rich testified that the puffs of smoke appeared to be going up, which indicted that the gun was being fired towards the helicopter. This evidence was sufficient to connect defendant with crimes charged in counts 8, 9 and 10, and thus to corroborate Martinez's testimony.

B.      *No Unanimity Instruction Was Required*

Defendant contends the trial court prejudicially erred in failing to give a unanimity instruction with respect to the two charged second degree robberies (count 7 [Skolaski] and count 11 [Serrato]).**3** He argues that, although the amended complaint specified the victims of those counts, the verdict forms did not. Because the jury found defendant not guilty on count 7 (Skolaski) and guilty on count 11 (Serrato), defendant posits that some jurors may have found defendant guilty of robbing Serrato while others may have found him guilty of robbing Skolaski. We find no error.

" 'The right to a unanimous jury in criminal cases is guaranteed by the California Constitution. (Cal. Const., art. I, § 16; [citation].) . . . [¶] It is established that some assurance of unanimity is required where the evidence shows that the defendant has committed two or more similar acts, each of which is a separately chargeable offense, but the information charges fewer offenses than the evidence shows. [Citation.]' " (*People v. Milosavijevic* (2010) 183 Cal.App.4th 640, 645.) When the evidence suggests one discrete crime, either the prosecution must elect among the crimes, or the trial court must instruct the jury that it must unanimously agree that the defendant committed the same criminal act. (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 569.)

Here, no unanimity instruction was required because the information did not charge fewer offenses than the evidence showed. On the contrary, the amended information alleged two distinct second degree robberies, specifying Skolaski as the victim in count 7 and Serrato as the victim in count 11. As to both robbery counts, the *information* alleged enhancements for personal firearm use and personal discharge of a firearm. However, the jury was *instructed* that only count 7 (Skolaski) alleged an enhancement for personal discharge of a firearm. The verdict forms for counts 7 and 11 did not specify the robbery victims. In his closing argument, the prosecutor explained:

---

**3**      The jury found defendant not guilty of the robbery of Skolaski but defendant contends that the manner in which the jury was instructed as to both victims required a unanimity instruction as well. The error is directed to count 11, the robbery of Serrato.

"In counts 7 and 11, [defendant] is charged with committing robbery . . . . The two victims alleged in . . . those counts are Thomas Serrato and Matthew Skolaski. [¶] Now, you will find that in the charge against Thomas Serrato, the defendant is being charged with the special allegation that he personally *used* a firearm. When it comes to the count with respect to Matthew Skolaski, you will find the allegation that he personally and intentionally *discharged* the firearm as to Matthew Skolaski." (Italics added.)

The jury found defendant guilty of count 11 (Serrato) and found true the personal use of a firearm allegation. It found defendant not guilty on count 7 (Skolaski), which is consistent with the not guilty verdict on count 4, which named Skolaski as the victim of an assault with an assault weapon.

Although the better practice would have been to specify the victims in the verdict forms, we find nothing in the record to suggest that the jury did not understand, based on the prosecutor's explanation, the jury instructions and the verdict forms, that count 7 referred to Skolaski and count 11 referred to Serrato. That the jury found defendant not guilty of both counts in which Skolaski was the alleged victim (counts 4 and 7), demonstrates that the jury understood that count 7 charged defendant with second degree robbery of Skolaski and count 11 charged defendant with second degree robbery of Serrato.

C. *The Evidence Did Not Support Instruction on Theft as a Lesser Included Offense of Robbery*

Defendant contends it was prejudicial error not to instruct on theft as a lesser included offense of second degree robbery.[4] He argues that the evidence that defendant used force or fear against Serrato was extremely weak. We are not persuaded.

"A trial court is obliged to instruct, even without a request, on the general principles of law which relate to the issues presented by the evidence. (§§ 1093, subd. (f), 1127; [citations].) When the evidence is minimal and insubstantial, there is no

---

[4] Since defendant was found not guilty of the Skolaski robbery (count 7) we focus only on whether a lesser included instruction was required as to the Serrato robbery (count 11).

10

duty to instruct. [Citations.] The California Supreme Court recently reiterated: '[T]he existence of "*any* evidence, no matter how weak" will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is "substantial enough to merit consideration" by the jury. [Citations.] "Substantial evidence" in this context is " 'evidence from which a jury composed of reasonable [persons] could . . . conclude[ ]' " that the lesser offense, but not the greater, was committed.' [Citations.] We conduct independent review of issues pertaining to instructions. [Citations.]" (*People v. Cooksey* (2002) 95 Cal.App.4th 1407, 1410-1411.)

Robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) Theft, defined in section 484 as the felonious stealing, taking, carrying, leading or driving away the personal property of another, is a lesser included offense of robbery, missing only the elements of force or fear. (*People v. Williams* (2013) 57 Cal.4th 776, 786-787; *People v. Whalen* (2013) 56 Cal.4th 1, 69.)

Fear may be inferred from the circumstances in which the crime is committed. (*People v. Cuevas* (2001) 89 Cal.App.4th 689, 698.) Evidence that the victim believed the defendant was armed is sufficient to establish fear. (See e.g. *People v. James* (1963) 218 Cal.App.2d 166, 170 [victim's testimony that she thought robber had a gun and robber shouted at her not to try anything or she would get hurt, sufficient to establish fear]; see also *People v. Jackson* (1967) 253 Cal.App.2d 68, 74 [victim's testimony that he gave up money because he thought the defendant had a gun and he was afraid of the defendant was sufficient to establish fear].)

"[A] robbery is not completed at the moment the robber obtains possession of the stolen property and . . . the crime of robbery includes the element of asportation, the robber's escape with the loot being considered as important in the commission of the crime as gaining possession of the property. [Citations.]" (*People v. Gomez* (2008) 43 Cal.4th 249, 255.) The use of force or fear to retain property (i.e., during the

asportation phase) constitutes a robbery. (*Id*. at p. 258, citing *People v.* Estes (1983) 147 Cal.App.3d 23, 26.)

Here, Serrato testified that he had a gun in his truck when he drove over to the shooting range office to investigate the sound of gunshots coming from that location. Notwithstanding that he himself was armed, when Serrato saw defendant run out of the office holding a gun, Serrato backed up his truck as far as possible because he was afraid. Serrato waited until defendant was out of sight before getting out of his truck, going into the office and calling 911. There is no evidence from which a rational trier of fact could infer that Serrato allowed defendant to drive away with the stolen goods for any reason other than that he was afraid of being shot by defendant. Thus, there was no evidence that the taking was anything other than a robbery and, therefore, no evidence to support instruction on theft as a lesser included offense of robbery.

Even if we were to conclude the trial court erred in failing to instruct the jury on the lesser included offense of theft, we would find the error harmless under any standard. Serrato's testimony was extremely strong evidence that defendant was able to escape with the loot only because Serrato saw that defendant was armed and for this reason was afraid to interfere with his escape. Under these circumstances, it is not reasonably probable (*People v. Watson* (1956) 46 Cal.2d 818, 836-837) that the jury would have concluded defendant was guilty of theft but not robbery, and further, any error was harmless beyond a reasonable doubt (see *Chapman v. California* (1967) 386 U.S. 18, 24).

## DISPOSITION

The judgment is affirmed.


                                                            RUBIN, J.
WE CONCUR:


        BIGELOW, P. J.                                      GRIMES, J.

12